**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
COLUMBUS DIVISION**

| | |
|---|---|
| **ELIZABETH CAMERON**<br>5005 Majestic Drive East<br>Columbus, OH 43232<br><br>          Plaintiff,<br><br>   v.<br><br>**OCWEN LOAN SERVICING, LLC**<br>℅ Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215<br><br>**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-R11**<br>1761 East St.<br>Andrew Place, Santa Ana CA 92705<br><br>      and<br><br>**MANLEY DEAS KOCHALSKI LLC**<br>℅ Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215<br><br>      Defendants. | Case No.:<br><br>Judge:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Elizabeth Cameron, by and through counsel, for her Complaint against

Ocwen Loan Servicing, LLC, states as follows.

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Elizabeth Cameron ("Plaintiff" or "Cameron") is the owner of real property and the improvements thereon located at and commonly known as 5005 Majestic Drive East Columbus, Ohio 43232 (the "Home").

2.      Plaintiff currently maintains the Home as her primary, principal residence, and has so maintained the Home as such for all times relevant to the allegations of this Complaint.

3.      Defendant Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2004-R11 ("Deutsche") is the primary assignee and owner of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively the "Loan"). A copy of the Loan is attached as *Composite Exhibit 1*.

4.      Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a wholly owned and operated subsidiary of Ocwen Financial Corporation and is a limited liability company incorporated under the laws of the State of Delaware.

5.      Ocwen is registered to do business with the Ohio Secretary of State and maintains its principal place of business at 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409.

6.      Ocwen has acted as the agent of and loan servicer for the Loan on behalf of Deutsche since March 11, 2013 and continues to act in such capacity for Deutsche. As a loan servicer, Ocwen is a partial assignee of the Loan.

7.     At all times relevant herein prior to March 11, 2013, non-party American Home Mortgage Servicing, Inc. ("AHMSI") acted as the agent of and loan servicer for the Loan on behalf of Deutsche.

8.     Defendant Manley Deas Kochalski LLC ("MDK") is an Ohio limited liability company which has members and employees engaged in the practice of law in the State of Ohio.

9.     MDK acted as the agent and attorney for Deutsche and Ocwen with respect to MDK's conduct discussed, *infra*.

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA) and the Fair Debt Collection Practices Act, 12 U.S.C. §§1692, *et seq*. ("FDCPA").

11.     This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to Section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.35 of Regulation X.

12.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff maintains the Home as her primary residence within this District, Ocwen does business within this District, and the conduct giving rise to the causes of action in this Complaint, *infra*, occurred primarily within this District.

## **INTRODUCTION**

13.     In 2013, Cameron became caught in a homeowner's nightmare after her mortgage servicer Ocwen repudiated a loan modification agreement that had been negotiated in a foreclosure mediation in 2009, approved by a bankruptcy court in 2010, and onboarded by a prior servicer in 2011. Immediately after Ocwen was designated as the servicer on the account in 2013, Ocwen reversed four years of Cameron's payments and misapplied those payments towards an incorrect, unmodified loan balance. Although Cameron had made each and every payment in full and on time pursuant to the loan modification agreement, Ocwen insisted that the loan was in default and refused to accept five months of further payments from Cameron. Throughout 2013, Cameron repeatedly wrote to Ocwen to request that it correct its errors, but Ocwen refused. Four years later, in 2017, Ocwen directed its attorneys to reopen the 2009 foreclosure case and file a motion for default judgment against Cameron. The motion was granted days later, before Cameron could respond, and the property was immediately scheduled for a sheriff sale. Cameron filed a motion to vacate the judgment, which was ultimately granted, but the foreclosure case has not been dismissed and remains pending and Ocwen has yet to correct its errors in failing to honor the loan modification agreement.

14.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010). These rules were designed to create a process to allow mortgage loan servicers like Ocwen to have an opportunity to cure their mistakes after

appropriate notice from borrowers like Plaintiff and to grant such borrowers a right of action to seek damage for their failure to do so.

15.     Specifically, on January 17, 2013, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 ("Regulation X") (February 14, 2013), which became effective on January 10, 2014.

16.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

17.     Ocwen is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4).

18.     Ocwen is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

19.     Plaintiff asserts a claim for relief against Ocwen for breaches of the specific rules under Regulation X as set forth, *infra*.

20.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

21.     Plaintiff asserts claims for relief against Ocwen and MDK for violation of the FDCPA as set forth, *infra*.

22.     Plaintiff asserts common law claims for breach of contract against Ocwen and Deutsche.

## STATEMENT OF FACTS

23.     On or about May 29, 2009, Deutsche initiated foreclosure proceedings against Plaintiff relating to the Home and the Loan in the Court of Common Pleas for

Franklin County, Ohio, assigned Case No. 09 CV 008043 (the "Foreclosure"). A copy of the docket entries for the Foreclosure obtained from the website for the Franklin County Clerk of Courts is attached as **Exhibit 2**.

24.      On or about October 14, 2009, the Foreclosure was referred for mediation on or about November 2, 2009 (the "Foreclosure Mediation").

25.      As a result of the Foreclosure Mediation, Plaintiff and Deutsche reached an agreement for Plaintiff to remit three (3) trial payments, each due on December 1, 2009, January 1, 2010, and February 1, 2010, respectively wherein at the conclusion of the trial period, a loan modification would be considered. A copy of such agreement is attached as **Exhibit 3**.

26.      On February 1, 2010, shortly after making the final trial payment, but before a permanent loan modification could be finalized, Plaintiff filed bankruptcy proceedings under Chapter 13, Title 11, of the United States Code in the United States Bankruptcy Court for the Southern District of Ohio, Case No. 2:10-bk-50991 (the "Bankruptcy").

27.      Pursuant to the filing of the Bankruptcy, the Foreclosure was stayed via Court Order on or about February 11, 2010.

28.      On June 4, 2010, Deutsche filed a proof of claim for the Loan in the Bankruptcy as the creditor of the Loan AHMSI acting as the servicer of the Loan.

29.      On September 13, 2010, AHMSI filed a motion in the Bankruptcy seeking to modify the Loan (the "Motion to Modify") stating that "[t]he parties agree to terms and conditions set forth in attached Loan Modification Agreement terms." A copy of

the Motion to Modify, as well as the Loan Modification Agreement terms attached to such ("Modification #1"), are attached as **Composite Exhibit 4**.

30.     Modification #1 had the following terms:

      a.     Effective date of June 1, 2010;

      b.     Monthly principal and interest payments of $674.32;

      c.     Monthly escrow payments (including homeowner's association fees) of $273.63, adjusting periodically;

      d.     Interest rate of 5.000%; and,

      e.     Unpaid principal balance of $113,776.18.

See **Exhibit 4.**

31.     Judge Hoffman, Jr. granted the Motion to Modify via Order filed October 25, 2010 ("Order Approving Modification #1") stating that Plaintiff and AHMSI "are permitted to enter into a Loan Modification AGreement according to the terms attached to this order", specifically, Modification #1. A copy of Order Approving Modification #1 is attached as **Exhibit 5**.

32.     For reasons unknown, neither AHMSI nor Deutsche ever took any further action to implement the terms of Modification #1 despite the agreement of all parties and the approval of the Bankruptcy judge.

33.     On or about April 29, 2011, AHMSI sent correspondence to Plaintiff stating that Plaintiff qualified for a "Home Affordable Modification" ("Modification #2"), which the Borrower accepted. A copy of such correspondence and Modification #2 is attached as **Exhibit 6**.

34.     Modification #2 had the following terms:

    a.     Effective date of March 1, 2010;

    b.     Maturity date of September 1, 2034;

    c.     Monthly principal and interest payments of $213.31 for the first five (5) years and then adjusting annually thereafter before plateauing at $322.28 for the remaining term of the Loan as of February 1, 2017;

    d.     Monthly escrow payments (including homeowner's association fees) of $239.48, adjusting periodically;

    e.     Interest rate of 2.000% for the first five (5) years and then adjusting annually thereafter before plateauing at 5.000% for the remaining term of the Loan as of February 1, 2017;

    f.     Interest bearing principal balance of $112,213.19; and,

    g.     Deferred principal balance of $70,439.19 payable upon maturity of the Loan as modified.

See ***Exhibit 6.***

35.     Plaintiff timely and properly accepted Modification #2.

36.     AHMSI filed two (2) motions in the Bankruptcy, on July 15, 2011 and September 6, 2011, respectively, seeking approval for Modification #2. Copies of each such motions are attached as ***Exhibit 7*** and ***Exhibit 8***, respectively.

37.     In furtherance of Modification #2 and the parties' intent to abide by the same, on October 5, 2011, AHMSI sent correspondence stating:

> [AHMSI] has processed [Modification #2] on the [Loan] and made the required changes to its Loan Servicing system. Enclosed is a copy of the signed Modification Agreement for your records.
>
> Your loan is now due for the October payment in the amount of $504.96.

A copy of such correspondence is attached as ***Exhibit 9***.

38.    Plaintiff subsequently made all required periodic payments on the Loan as modified through Modification #2 in a timely manner from October 2011 through the completion of the Bankruptcy in March 2013, remitting sixteen (16) periodic payments in total to AHMSI.

39.    On March 28, 2013, an Order discharging Plaintiff from the Bankruptcy was entered (the "Discharge").

40.    At the time of the Discharge, the parties intended for the Loan to have been Modified, and as such, the Loan was reinstated and deemed current.

41.    Ocwen obtained servicing rights to the Loan effective March 11, 2013.

42.    Ocwen sent a mortgage statement dated March 15, 2013 (the "March Statement"), indicating that Ocwen was not honoring the terms of Modification #2 as the terms on the March Statement had reverted to the original terms of the Loan. A copy of the March Statement is attached as ***Exhibit 10***.

43.    Despite such, in a showing of good faith, Plaintiff attempted to remit payments in accordance with the terms of Modification #2 on May 17, 2013, June 6, 2013, and July 5, 2013, July 10, 2013, all of which Ocwen rejected (the "Rejected

Payments"). *Copies of e-mails evidencing Ocwen's refusal to accept the Rejected Payments are attached as **Composite Exhibit 11***.

44.    In late 2013, Plaintiff sought the assistance of Attorney Hillard M. Abroms of Abroms Law Office ("Abroms") to have Ocwen correct their errors and honor Modification #2.

45.    Plaintiff, by and through Abroms, sent two (2) separate Qualified Written Requests (the "QWRs") to Ocwen requesting that Ocwen correct their errors and resuming accepting Plaintiff's payments under Modification #2. Copies of one of the QWRs as well as Ocwen's responses to the QWRs are attached as ***Composite Exhibit 12***.

46.    While the statute of limitations has passed concerning violations of RESPA for Ocwen's responses to the QWRs, it should be noted that despite being put on notice of their erroneous actions on multiple occasions through the QWRs, Ocwen failed to correct the same evidencing a pattern and practice of indifference and disregard for Plaintiff's concerns and their erroneous actions. Further as to this point, in their responses, Ocwen completely failed to appropriately research and convey simple facts such as under which chapter of the United States Bankruptcy Code Plaintiff filed the Bankruptcy, claiming in their November 1, 2013 response that Plaintiff "filed for Bankruptcy Chapter 7" along with her ex-husband, who did not file jointly in the Bankruptcy.

**Foreclosure Proceedings Continued**

10

47.     On or about January 22, 2014, MDK filed an appearance and substitution of counsel for Deutsche in the Foreclosure. See *Exhibit 2*.

48.     On June 30, 2017, MDK, on behalf of Deutsche, moved to reopen the Foreclosure. See *Exhibit 2*.

49.     After the Foreclosure was reopened, on July 26, 2017, three (3) years after originally filing an appearance in the case, four (4) years after the Discharge, and roughly eight (8) years after the filing of the Foreclosure and the Bankruptcy, with Plaintiff having entered into Modification #1 and Modification #2 and remitting more than sixteen (16) payments under Modification #2 which were applied by AHMSI thereby curing the original default at issue in the Foreclosure, MDK, on behalf of Deutsche, moved for default judgment against Plaintiff for failure to file a timely answer or responsive pleading to the 2009 Foreclosure complaint. See *Exhibit 2*.

50.     ***Without a hearing***, the court granted default judgment against Plaintiff on July 31, 2017, a mere ***four (4) days after the motion for default judgment was filed***, likely at or before the time Plaintiff would have received a copy of such motion and before Plaintiff would have had a chance to respond to such. See *Exhibit 2*.

51.     MDK, on behalf of Deutsche, filed a "Praecipe to Issue Order of Sale" in the Foreclosure on August 8, 2017, to initiate the final process of scheduling a foreclosure sale of the Home. See *Exhibit 2*.

52.     Plaintiff subsequently hired counsel, DannLaw ("DL"), to file any necessary motions to vacate the judgment of foreclosure and otherwise stay any foreclosure sale in the meantime.

11

53. Plaintiff filed a motion to set aside the default judgment in the Foreclosure on or about October 18, 2017. See *Exhibit 2*.

54. The parties agreed to stay the Foreclosure proceedings and refer the matter to mediation to attempt to reach a settlement in this matter. See *Exhibit 2*.

55. The mediation did not prove fruitful, but the parties agreed to to vacate the judgment in the Foreclosure via an Agreed Order filed on February 5, 2018. See *Exhibit 2*.

56. Ocwen, Deutsche, and MDK did not agree to dismiss the Foreclosure action.

57. On or about February 5, 2018, Plaintiff, by and through DL, sent a notice of error (the "NOE") to Ocwen captioned "Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to honor the terms of Modification #1 and Modification #2; Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(2) for failure to properly apply accepted payments to principal, interest, escrow or other charges under the terms of the mortgage loan and applicable law; Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(1) for failing to accept payments that conform to written requirements for the Borrower to follow in making payments" via Certified U.S. Mail [Receipt No. 7014 2120 0003 0667 1927. A copy of the NOE is attached as *Exhibit 13*.

58. Plaintiff, through the NOE, asserted that Ocwen committed errors in the servicing of the Loan through substantially similar allegations as the preceding paragraphs of this Complaint, *supra*, namely, refusing to honor Modification #1 and Modification #2, failing to apply Plaintiffs' payments in accordance with said

12

agreements, and refusing to accept payments in accordance with said agreement. See *Exhibit 13*.

59.     The NOE provided clear instructions to Ocwen as to how it should respond and the consequences if it failed to respond. *See Exhibit 13*.

60.     Plaintiff sent the NOE to Ocwen at the address designated by Ocwen for receipt of notices of error, which was at all relevant times:

> Ocwen Research
> P.O. Box 24736
> West Palm Beach, FL 33416-4736

(the "Designated Address"). *See Exhibit 13*.

61.     Ocwen received the NOE at the Designated Address on February 10, 2018. A copy of tracking information for the NOE is attached as *Exhibit 14*.

62.     Ocwen, by and through Attorney Sarah Alford Wilson ("Wilson") of BlankRome ("BR"), sent correspondence to Plaintiff dated March 22, 2018, requesting an additional fifteen (15) business days to research and respond to the NOE. A copy of such correspondence is attached as *Exhibit 15*.

63.     On or about April 17, 2018, Ocwen, through Attorney Wilson of BR, sent correspondence in response to the NOE (the "NOE Response"). A copy of the NOE Response is attached as *Exhibit 16*.

64.     Ocwen, through the NOE Response, stated:

> Please be advised that Ocwen's investigation of the above issues is ongoing, as Ocwen has been unable to determine why [Modification #1] and [Modification #2] were not implemented by AHMSI, and why the Loan was not boarded with Ocwen as modified by [Modification #2].

See *Exhibit 16*.

65. To date, the issues surrounding the subject matter of the NOE and this action remain unresolved.

66. Plaintiff brings this action in an effort to clarify her rights and the rights of Ocwen and Deutsche relative to Modification #1 and Modification #2, to seek enforcement of the Modification #1 and Modification #2, enforce her rights under RESPA against Ocwen, and to put an end to the constant concern, worry, and anxiety that she have over Ocwen's servicing of the Loan as a direct and proximate result of Ocwen's refusal to implement Modification #1 and Modification #2 while Deutsche and MDK continue to litigate the Foreclosure which has been pending for nine (9) years despite such agreements and Plaintiff's payments under such agreements.

67. Ocwen failed to properly service the Loan and correct its error of refusing to implement and otherwise breaching Modification #1 and Modification #2 which, along with the acts of Deutsche and MDK, has directly and proximately caused damages to Plaintiff, including, but not limited to:

> a. Plaintiff incurred attorneys' fees and costs in seeking to vacate the default judgment in the Foreclosure and in attending subsequent hearings and settlement discussions as well lost time and travel expenses to and from court;
>
> b. Plaintiff incurred attorneys' fees and costs in the preparation and mailing of the NOE and the preparation and prosecution of this action.;

c. Plaintiff incurred lost time, travel expenses to and from court, filing fees, attorneys' fees to defend the Foreclosure.

d. Plaintiff hoped and believed that, by entering into Modification #1 and Modification #2, she would secure the opportunity to begin the long process of rehabilitating her credit standing following the Bankruptcy and be entitled to the "fresh financial start" to which she is entitled pursuant to the Discharge, but Ocwen, Deutsche, and MDK have deprived Plaintiff of such an opportunity by refusing to honor the terms of Modification #1 and Modification #2, maintaining the Foreclosure, and continuing to report Plaintiff as delinquent;

e. Plaintiff has endured and continues to endure severe emotional distress directly and proximately caused by the conduct of Ocwen, Deutsche, and MDK. This stress is driven by the daily ongoing fear that she might lose her Home in foreclosure and be forced to leave her Home. This stress and fear has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant and persistent emotional distress;

f. Plaintiff has been caused to unnecessarily remain in a default or otherwise in delinquent status on the Loan and remain in foreclosure for a significantly longer time than they would have if Ocwen, Deutsch, and MDK had acted appropriately and with reasonable diligence in their handling of errors alleged, which has caused continued damage to her credit and an unnecessary delay to the rehabilitation of her credit.

68.     Throughout this entire ordeal, Plaintiff simply wanted to enter into and continue paying under Modification #1 and Modification #2, avoid foreclosure, begin rehabilitating her credit, and most importantly, remain in the Home.

### PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY OCWEN

69.     Ocwen has engaged in a pattern and practice of mistreating mortgage loan borrowers and violating the mortgage servicing regulations set forth in Regulation X of RESPA.

70.     Ocwen's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of Ocwen's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

71.     At the time of the filing of this Complaint, Ocwen has at least Eleven Thousand Seventy Five (11,075) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaintdatabase/).

72.     Plaintiff has reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Ocwen against other borrowers. In particular, Plaintiff has reviewed the fifteen (15) consumer complaints attached hereto and identified as *Group Exhibit 17*. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which

demonstrates that Ocwen has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

73.     On April 20, 2017, the CFPB filed suit against Ocwen in the Federal District Court for the Southern District of Florida (Case No. 9:17-cv-80495) ("CFPB Lawsuit").

74.     The CFPB Lawsuit alleges in Paragraph 33 a possible explanation for Plaintiff's trevails and clearly demonstrates that Ocwen's behavior in this case is part of a larger pattern and practice:

> As set forth in greater detail below, Ocwen has serviced loans and collected upon debts based on inaccurate and incomplete borrower loan information. Ocwen has often input inaccurate and incomplete information, or failed to input accurate or complete information, about borrowers' loans into its REALServicing system of record. Even when the information in REALServicing has been accurate, REALServicing has generated inaccurate information about borrowers' loans due to system deficiencies. Because of these system deficiencies, Ocwen has had to rely upon manual processes and workarounds that have themselves resulted in errors in borrowers' loan information.

75.     Paragraph 69 of the CFPB Complaint provide further indication that the problems Plaintiff has encountered were part of a larger pattern and practice:

> Ocwen's use of inaccurate and incomplete information resulting from its boarding of inaccurate and incomplete information into REALServicing, REALServicing's deficiencies, and Ocwen's error-prone manual processes has caused or is likely to have caused borrowers substantial harm, and resulted in Ocwen communicating, orally and in writing, information to borrowers that it knew or had a reason to know was inaccurate.

17

76.     Ocwen has entered into consent decrees with numerous states concerning the same deficiencies in their servicing practices as in the CFPB Complaint (the "Consent Decrees").[1]

## COUNT ONE: AGAINST DEUTSCHE AND OCWEN

### [Breach of Contract]

77.     Plaintiff restates and incorporates all of her statements and allegations contained in paragraphs 1 through ## in their entirety, as if fully rewritten herein.

78.     Modification #1 is an enforceable contract between Plaintiff, Deutsche, and Ocwen.

79.     Deutsche and Ocwen breached the contract by refusing to honor Modification #1 and failing to properly apply Plaintiff's payments.

80.     Plaintiff performed on her obligations pursuant to Modification #1 by making payment of amounts properly due and by otherwise substantially meeting the obligations imposed by the contract.

81.     Deutsche and Ocwen have breached the contract is bad faith. This is evidenced by the fact that Ocwen has failed to timely investigate and mitigate damages despite Plaintiff's repeated pleas, requests, and demands that the errors they identified should be corrected via the NOE and otherwise.

---

[1] Ocwen has entered into such consent decrees with the following states: Alabama, Arkansas, Connecticut, the District of Columbia, Georgia, Hawaii, Idaho, Illinois, Maine, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, New Mexico, North Carolina, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Virginia, West Virginia, Wisconsin, and Wyoming. Ocwen is currently involved in active litigation with Florida and Massachusetts concerning such issues. Consent orders were issued in California and Washington on February 17, 2017 and August 24, 2016, respectively.

82.     As pled, *supra*, Plaintiff has been harmed by, and continue to suffer from harm resulting from, Deutsche's and Ocwen's respective breaches of Modification #1 by refusing to honor the terms of Modification #1, taking away the opportunity for Plaintiff to obtain a reasonable, permanent loan modification.

83.     Plaintiff was forced to retain counsel to aid in enforcing Modification #1, incurring attorneys' fees and costs in preparing and mailing the NOE and in defending the Foreclosure.

84.     The conduct of Deutsche and Ocwen has caused Plaintiff to suffer great emotional distress driven by the fear that she might lose the Home and be forced to leave the Home which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

85.     Plaintiff is entitled to actual damages, reasonable attorneys' fees and costs jointly and severally against Deutsche and Ocwen.

## COUNT TWO: AGAINST DEUTSCHE AND OCWEN

### [Breach of Contract]

86.     Plaintiff restates and incorporates all of her statements and allegations contained in paragraphs 1 through ## in their entirety, as if fully rewritten herein.

87.     Modification #2 is an enforceable contract between Plaintiff, Deutsche, and Ocwen.

88.     Deutsche and Ocwen breached the contract by refusing to honor Modification #2 and failing to properly apply Plaintiff's payments.

89. Plaintiff performed on her obligations pursuant to Modification #2 by making approximately sixteen (16) payments of amounts properly due and by otherwise substantially meeting the obligations imposed by the contract.

90. Plaintiff attempted to continue her dutiful performance under Modification #2, but was thwarted in such efforts by Ocwen's rejection of Plaintiff's periodic payments. See *Exhibit 11*.

91. Deutsche and Ocwen have breached the contract is bad faith. This is evidenced by the fact that Ocwen has failed to timely investigate and mitigate damages despite Plaintiff's repeated pleas, requests, and demands that the errors they identified should be corrected via the NOE and otherwise.

92. As pled, *supra*, Plaintiff has been harmed by, and continue to suffer from harm resulting from, Deutsche's and Ocwen's respective breaches of Modification #2 by refusing to honor the terms of Modification #2, taking away the opportunity for Plaintiff to obtain a reasonable, permanent loan modification.

93. Plaintiff was forced to retain counsel to aid in enforcing Modification #2, incurring attorneys' fees and costs in preparing and mailing the NOE and in defending the Foreclosure.

94. The conduct of Deutsche and Ocwen has caused Plaintiff to suffer great emotional distress driven by the fear that she might lose the Home and be forced to leave the Home which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

95.     Plaintiff is entitled to actual damages, reasonable attorneys' fees and costs jointly and severally against Deutsche and Ocwen.

## COUNT THREE: AGAINST OCWEN

### Violation of 12 C.F.R. §1024.35(e)

### [Ocwen's Failure to Properly Respond to a Notice of Error in Violation of 12 C.F.R. §1024.35]

96.     Plaintiff restates and incorporates all of her statements and allegations contained in paragraphs 1 through ## in their entirety, as if fully rewritten herein.

97.     12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

98.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

99.     12 C.F.R. § 1024.35(d) provides that a servicer must acknowledge in writing receiving a notice of error from a borrower within five (5) days of receipt.

100.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

101. The NOE meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See **Exhibit 13***.

102. Plaintiffs sent the NOE to Ocwen at the Designated Address. *See **Exhibit 13** and **Exhibit 14***.

103. By and through the NOE, Plaintiff alleged that Ocwen's failure to honor Modification #1 and Modification #2, Ocwen's subsequent failure to properly apply the sixteen (16) payments made by Plaintiff pursuant to Modification #2, and Ocwen's subsequent refusal to accept the Rejected Payments constituted approximately twenty-two (22) clear, continuing, and egregious errors. *See Exhibit 13*.

104. Ocwen received the NOE at the Designated Address on February 10, 2018. *See **Exhibit 14***.

105. Pursuant to 12 C.F.R. §§ 1024.35(e)(3)(i)(C) and 1024.35(e)(3)(ii), Ocwen was required to respond to the NOE on or before April 16, 2018. *See **Exhibit 14***.

106. The NOE Response failed to satisfy the requirements of either 12 C.F.R. §§ 1024.35(e)(1)(A) or 1024.35(e)(1)(B). *See **Exhibit 16***.

107. Ocwen, through the NOE Response, did not acknowledge that any of the alleged errors occurred and state the date of the correction of any such errors. *See Exhibit 16*.

108. Ocwen, through the NOE Response, did not deny that any of the alleged errors occurred after performing a reasonable investigation into the same. *See Exhibit 16*.

109. Rather, Ocwen, through the NOE Response, stated that their investigation into the errors alleged by and through the NOE would be ambiguously and amorphously continuing beyond the statutory deadline of April 16, 2018. *See Exhibit 16*.

110. To this date, Ocwen has failed to correct the errors asserted through the NOE.

111. Ocwen's actions are part of a pattern and practice of behavior in violation of the Plaintiff's rights and the rights of other similarly situated borrowers and in violation of Ocwen's obligations under Regulation X of RESPA. Ocwen's pattern and practice as such is evidenced by their consistent refusal to appropriately respond to and correct the errors Plaintiff alleged through the QWRs and the NOE as well as by the CFPB Lawsuit and the consent decrees further described, *supra*.

112. Plaintiff has suffered damages as a direct and proximate result of Ocwen's actions including incurring legal fees and expenses in the preparation and mailing of the NOE and, ultimately, to preparation, filing, and prosecution of this case to remedy Ocwen's wrongful conduct.

113.    Additionally, Plaintiff has suffered, and continues to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress.

114.    As a result of Ocwen's actions, Ocwen is liable to Plaintiff for actual damages, statutory damages, costs, and attorney's fees.

## COUNT FOUR: AGAINST OCWEN

### Violation of 15 U.S.C. §1692k

### [Violation of the Fair Debt Collection Practices Act]

115.    Plaintiff restates and incorporates all of her statements and allegations contained in paragraphs 1 through ## in their entirety, as if fully rewritten herein.

116.    Ocwen is a debt collector within the meaning under the FDCPA. Ocwen regularly uses the instrumentalities of interstate commerce and/or the mails in its business the principal purpose of which is the collection of debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

117.    Plaintiff is a consumer within the meaning under the FDCPA.

118.    The Loan is a consumer debt within the meaning under the FDCPA as it was incurred for household purposes, namely, the purchase of the Home.

119.    The Loan was claimed to be in default per the records of Ocwen and Deutsche at the time that Ocwen attempted to collect the debt by means of permitting, facilitating, otherwise directing the reactivation of the Foreclosure, the filing of the

motion for default judgment, the filing of the "Praecipe to Issue Order of Sale", and the general maintenance of the foreclosure proceeding following the Discharge.

120. Ocwen violated 15 U.S.C. §1692(e)(2) when it misrepresented the character, amount, or legal status of the Loan. Ocwen misrepresented to Plaintiff that the she was in default, that she owed sums which were not in fact due, and that the Home would be foreclosed upon.

121. Ocwen knew or had reason to know that the sums claimed were not in fact due, that the Loan was not in default, that payments had been properly and timely made, that Ocwen had repeatedly misapplied and wrongfully refused those payments, and that the Foreclosure had been improperly maintained for years.

122. Ocwen violated 15 U.S.C. §1692(e)(5) when it threatened to take an action, the collection of amounts not due, that cannot legally be taken.

123. Ocwen violated 15 U.S.C. §1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

124. Ocwen violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt, namely, permitting, facilitating, or directing the threat of an imminent foreclosure sale of the Home.

125. Plaintiff was damaged by the above actions as described *supra*.

126. As a result of the above violations of the FDCPA, Plaintiff is entitled to an award of statutory damages, actual damages, and legal fees pursuant to 15 U.S.C. §1692k(a).

## COUNT FIVE: AGAINST MDK

### Violation of 15 U.S.C. §1692k

**[Violation of the Fair Debt Collection Practices Act]**

127.   Plaintiff restates and incorporates all of her statements and allegations contained in paragraphs 1 through ## in their entirety, as if fully rewritten herein.

128.   MDK is a debt collector within the meaning under the FDCPA. MDK regularly uses the instrumentalities of interstate commerce and/or the mails in its business the principal purpose of which is the collection of debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

129.   Plaintiff is a consumer within the meaning under the FDCPA.

130.   The Loan is a consumer debt within the meaning under the FDCPA asit was incurred for household purposes, namely, the purchase of the Home.

131.   The Loan was claimed to be in default per the records of Ocwen and Deutsche at the time that MDK attempted to collect the debt by means of the reactivation of the Foreclosure, the filing of the motion for default judgment, the filing of the "Praecipe to Issue Order of Sale", and the general maintenance of the foreclosure proceeding following the Discharge.

132.   MDK violated 15 U.S.C. §1692(e)(2) when it misrepresented the character, amount, or legal status of the Loan. MDK misrepresented to Plaintiff that the she was in default, that she owed sums which were not in fact due, and that the Home would be foreclosed upon.

133.   MDK knew or had reason to know that the sums claimed by Ocwen and Deutsche were not in fact due, that the Loan was not in default, that payments had

been properly and timely made, that Ocwen had repeatedly misapplied and wrongfully refused those payments, and that the Foreclosure had been improperly maintained for years.

134.　MDK violated 15 U.S.C. §1692(e)(5) when it threatened to take an action, the collection of amounts not due, that cannot legally be taken.

135.　MDK violated 15 U.S.C. §1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

136.　MDK violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt, namely, the threat of an imminent foreclosure sale of the Home.

137.　Plaintiff was damaged by the above actions as described *supra*.

138.　As a result of the above violations of the FDCPA, Plaintiff is entitled to an award of statutory damages, actual damages, and legal fees pursuant to 15 U.S.C. §1692k(a).

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff Elizabeth Cameron respectfully requests that this Court enter an order granting Judgment against Defendants Deutsche, Ocwen, and MDK for the following:

A.　For actual damages, all costs and reasonable attorney fees against Defendants jointly and severally, as applicable, as to all allegations contained in Counts One through Five;

B.　For statutory damages of Two Thousand Dollars ($2,000.00)

against Ocwen for each and every violation contained in Count Three;

      C.    For statutory damages of One Thousand Dollars ($1,000.00)

against Ocwen for each and every violation contained in Count Four;

      D.    For statutory damages of One Thousand Dollars ($1,000.00)

against MDK for each and every violation contained in Count Five;

      E.    For all other relief this Court may deem just and proper.

*Respectfully submitted,*

/s/ Marc E. Dann, Esq.
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Emily White (0085662)
DannLaw
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Elizabeth Cameron*

---

## JURY DEMAND

Plaintiff Elizabeth Cameron hereby respectfully demands a trial by jury on all such claims that may be so tried.

/s/ Marc E. Dann, Esq.
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Emily White (0085662)
DannLaw

28