


PO Box 631730
Irving, TX 75061-1730

9-764-58565-0000003-001-000-000-000-000

ELIZABETH A CAMERON
5005 MAJESTIC DR E
COLUMBUS OH  43232-4125

764-4002-0809F



American Home Mortgage Servicing, Inc.
Attention: HAMP MOD Agreement
4875 Belfort Road, Ste #130
Jacksonville FL  32256-6059

When returning your
mail documents be sure
this address shows through
the return envelope.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* *NOTICE!  DO NOT DISCARD!* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# HELPING YOU STAY IN YOUR HOME.





*You may be able to make your payments more affordable.*
*Act now to get the help you need!*

04/29/2011

ELIZABETH A CAMERON
5005 Majestic Dr E
Columbus OH  43232-4125

Loan #:   REDACTE
Property Address:   5005  MAJESTIC DR
COLUMBUS OH 43232

Dear ELIZABETH A CAMERON:

**Congratulations!** You are eligible for a Home Affordable Modification.  As previously described, if you comply with the terms of the Home Affordable Modification Trial Period Plan, we will modify your mortgage loan and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage.

**How to Accept This Offer:**

### STEP 1  COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE

To accept this offer, <u>you must sign and return both copies</u> of the Modification Agreement  <u>to us in the enclosed envelope</u> by 05/19/2011.  If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us.  We encourage you to  <u>make a copy</u> of all documents for your records.  If you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

### STEP 2  CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME

<u>Be certain to make any remaining trial period payments  on or before the dates they are due</u>. If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified.

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.

We look forward to hearing from you no later than 05/19/2011.

Sincerely,

American Home Mortgage Servicing, Inc.

American Home Mortgage Servicing, Inc., is a debt collector attempting to collect a debt.  Any information obtained will be used for that purpose.  However, in the event the debt has been discharged pursuant to or the addressee or recipient is under the protection of federal bankruptcy law, this communication is solely for informational purposes and is not an attempt to collect a debt.

The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages. As part of this program, we – your mortgage servicer – and the Federal Government are working to offer you options to help you stay in your home.

*Attachments:  Summary of Your Modified Mortgage, Two copies of the Modification Agreement*

MCL-309-09-08

764-4004-0809F

9-764-58565-0000003-001-3-000-000-000-000

Case 2:18-bk-50498-AJM Doc 61 Doc #1 Filed 09/06/11 05/24/18 Entered 09/06/11 03:55:38 Page ID #:78
Loan Modification     Page 3 of 13

## SUMMARY
Here is a summary of your modified mortgage.

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we will defer collection of and not collect interest on $41,774.00 of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums, and other required fees. Any prior waiver of escrows by your lender is no longer in effect. Your servicer will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums, and/or assessment amounts change, so the amount of your monthly payment that the servicer must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $239.48. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $235.55. You may pay this amount over a five-year (60 months) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.**

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**FEES.** There are no fees or other charges for this modification.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at 1-877-304-3100.

**BORROWER INCENTIVE.** If you make your monthly mortgage payments on time, you will accrue a monthly benefit equal to $83.33 [the lesser of: (i) $83.33 or (ii) one-half of the reduction in the monthly mortgage payment]. As long as your mortgage loan does not become 90 days delinquent, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the Trial Period Plan is executed. If your modified loan ever becomes 90 days delinquent, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current.

THIS MODIFICATION AGREEMENT CONVERTS YOUR LOAN INTO A BALLOON LOAN, WHICH MEANS THAT EVEN IF YOU MAKE ALL YOUR SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM (WHICH MAY CHANGE AS IS INDICATED BELOW). AS A RESULT, ON THE MATURITY DATE, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE (THE BALLOON PAYMENT INDICATED IN THE SCHEDULE BELOW) PLUS ALL ACCRUED AND UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

*CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE* - LENDER OR SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE. IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION AGREEMENT.

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"): [1]ELIZABETH A CAMERON
Lender or Servicer ("Lender"): American Home Mortgage Servicing, Inc.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 8/17/2004
Loan Number: 4000971640
Property Address ("Property"): 5005 MAJESTIC DR, COLUMBUS OH 43232

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations**. I certify, represent to Lender, and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B. I live in the Property as my principal residence, and the Property has not been condemned;
    C. There has been no change in the ownership of the Property since I signed the Loan Documents;
    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
    G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3157  3/09 (rev. 8/09)   *(page 1 of 5 pages)*

3. **The Modification**. If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 3/1/2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 3/1/2010 .

   A. The new Maturity Date will be: 9/1/2034.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amount") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $112,213.19 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. $41,774.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $70,439.19. Interest at the rate of 2% will begin to accrue on the Interest Bearing Principal Balance as of 2/1/2010 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 3/1/2010. My payment schedule for the modified loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2% | 2/1/2010 | $213.31 | $239.48 | $452.79 | 3/1/2010 | 60 |
| 6 | 3% | 2/1/2015 | $247.81 | May adjust periodically | May adjust periodically | 3/1/2015 | 12 |
| 7 | 4% | 2/1/2016 | $284.24 | May adjust periodically | May adjust periodically | 3/1/2016 | 12 |
| 8-25 | 5% | 2/1/2017 | $322.28 | May adjust periodically | May adjust periodically | 3/1/2017 | 211 |
| 25 | N/A% | N/A | $83,281.29 | N/A | $83,281.29 | 9/1/2034 | 1 |

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3157  3/09 (rev. 8/09)  *(page 2 of 5 pages)*

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements**. I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan, or Workout Plan that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within

such time period as Lender may require. My obligation to make such payments and to provide receipts shall, for all purposes, be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount, and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items, or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured), or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note must be waived with respect to any borrower "pay for performance" principal reduction payments that are applied to the Loan.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**  Form 3157  3/09 (rev. 8/09)  *(page 4 of 5 pages)*

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

In Witness Whereof, the Lender and I have executed this Agreement.

_____            _____ (Seal)
American Home Mortgage Servicing, Inc.    ELIZABETH A CAMERON
                                          _____
By: _____             Date

_____
Date

_____[Space Below This Line For Acknowledgement]_____

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                    Form 3157  3/09 (rev. 8/09)  *(page 5 of 5 pages)*


HMP4000971640HMODA042911

9-764-58565-0000003-001-9-000-000-000-000

Case 2:10-bk-50928-AMW FPD1Doc Filed 09/06/1105/02/18 Entered 09/06/11 03:55:33 Desc
Master Loan #: 0000004937 EPD1Doc #: 105/02/18 Page 9 of 13
Loan Modification    Page 9 of 13

THIS MODIFICATION AGREEMENT CONVERTS YOUR LOAN INTO A BALLOON LOAN, WHICH MEANS THAT EVEN IF YOU MAKE ALL YOUR SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM (WHICH MAY CHANGE AS IS INDICATED BELOW). AS A RESULT, ON THE MATURITY DATE, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE (THE BALLOON PAYMENT INDICATED IN THE SCHEDULE BELOW) PLUS ALL ACCRUED AND UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

*CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE* - LENDER OR SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE. IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION AGREEMENT.

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"): [1]ELIZABETH A CAMERON
Lender or Servicer ("Lender"): American Home Mortgage Servicing, Inc.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 8/17/2004
Loan Number: 4000971640
Property Address ("Property"): 5005 MAJESTIC DR, COLUMBUS OH 43232

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations**. I certify, represent to Lender, and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B. I live in the Property as my principal residence, and the Property has not been condemned;
    C. There has been no change in the ownership of the Property since I signed the Loan Documents;
    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
    G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**       Form 3157  3/09 (rev. 8/09)   *(page 1 of 5 pages)*

9-764-58565-0000003-001-10-000-000-000-000

3. **The Modification**. If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 3/1/2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 3/1/2010 .

   A. The new Maturity Date will be: 9/1/2034.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amount") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $112,213.19 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. $41,774.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $70,439.19. Interest at the rate of 2% will begin to accrue on the Interest Bearing Principal Balance as of 2/1/2010 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 3/1/2010. My payment schedule for the modified loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2% | 2/1/2010 | $213.31 | $239.48 | $452.79 | 3/1/2010 | 60 |
| 6 | 3% | 2/1/2015 | $247.81 | May adjust periodically | May adjust periodically | 3/1/2015 | 12 |
| 7 | 4% | 2/1/2016 | $284.24 | May adjust periodically | May adjust periodically | 3/1/2016 | 12 |
| 8-25 | 5% | 2/1/2017 | $322.28 | May adjust periodically | May adjust periodically | 3/1/2017 | 211 |
| 25 | N/A% | N/A | $83,281.29 | N/A | $83,281.29 | 9/1/2034 | 1 |

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                     Form 3157  3/09 (rev. 8/09)  *(page 2 of 5 pages)*

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements**. I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan, or Workout Plan that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**  Form 3157  3/09 (rev. 8/09)  *(page 3 of 5 pages)*

such time period as Lender may require. My obligation to make such payments and to provide receipts shall, for all purposes, be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount, and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items, or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured), or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note must be waived with respect to any borrower "pay for performance" principal reduction payments that are applied to the Loan.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**  Form 3157  3/09 (rev. 8/09)  *(page 4 of 5 pages)*

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

In Witness Whereof, the Lender and I have executed this Agreement.

_____          _____ (Seal)
American Home Mortgage Servicing, Inc.    ELIZABETH A CAMERON

By: _____          _____
                                          Date

_____
Date

_____[Space Below This Line For Acknowledgement]_____

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3157  3/09 (rev. 8/09)  *(page 5 of 5 pages)*


HMP4000971640HMODA042911