**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | |
|---|---|
| **ELIZABETH CAMERON**, | Case No. 2:18-cv-00428 |
| Plaintiff, | Judge Algenon L. Marbley |
| | Magistrate Judge Preston Deavers |
| v. | |
| **OCWEN LOAN SERVICING, LLC**, *et al.,* | |
| Defendants. | |

## <u>PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT</u>

Elizabeth Cameron ("Plaintiff"), through counsel, for her response to the Defendants' Motion for Summary Judgment ("Motion") (Doc. No. 27), states that the Motion should be denied because triable issues of fact remain which preclude entry of judgment in favor of the Defendants as a matter of law. In support, Plaintiff's Memorandum of Law in Opposition to Summary Judgment is submitted for the Court's consideration.

Respectfully Submitted,

<u>/s/ *Marc E. Dann*</u>
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Emily White (0085662)
Brian D. Flick (0081605)
DannLaw
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Elizabeth Cameron*

<u>**PLAINTIFF'S MEMORANDUM OF LAW**</u>
<u>**IN OPPOSITION TO SUMMARY JUDGMENT**</u>

Relevant, material facts - both undisputed and in dispute - preclude entry of summary judgment in Defendants' favor on the four counts of the complaint remaining at issue.[1]

## I.      INTRODUCTION

Elizabeth Cameron ("Plaintiff") brought this case because the owner of her home mortgage loan, Defendant Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2004-R11 ("Deutsche Bank") and the loan servicers it employed to do its bidding, American Home Mortgage Servicing, Inc ("AHMSI")[2] and Ocwen Loan Servicing, Inc. ("Ocwen"), have sought to repudiate contractual obligations in an effort to foreclose and sell her home. In the process, Defendants violated statutory obligations imposed by the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collections Practices Act ("FDCPA"), and orders of a United States Bankruptcy Court. The home loan at issue was undeniably modified as evidenced by the Defendants' judicial admissions of an intent to be bound and by acceptance of performance. Breaching these contractual obligations has damaged Plaintiff because she has been denied the benefit of her bargain, her payments have not been accepted, and she is at present risk to lose her home in foreclosure. Defendant Ocwen's violations of RESPA and FDCPA give rise to additional actual damages, statutory damages, and the right to recover fees and costs.

---

[1] The claims against defendant Manley Deas Kochalski LLC asserted in Count V of the Complaint have been resolved through settlement and that defendant has been dismissed pursuant to the Court's order (Doc. 19). Count V is therefore not at issue.
[2] AHMSI changed its name to Homeward Residential during the period when it serviced the Loan. *See* Deposition of Ocwen designated corporate representative Howard Handville, dated January 22, 2019 ("*Handville Depo.*"), attached as *Exhibit 1*; p.16. Homeward subsequently merged with Ocwen. (*Id.*).

Defendants' Motion selectively frames facts not in dispute, simply ignores facts which contradict their arguments, and inexplicably advances arguments refuted by their own prior judicial admissions. On this record, the Motion must be denied.

## II.     RELEVANT, MATERIAL FACTS UNDISPUTED AND DISPUTED

Relevant facts in this case are derived from the pleadings, Plaintiff's Complaint for Damages (*Doc. 1, "Compl."*) and the Answer and Affirmative Defenses of Defendants Ocwen and Deutsche Bank. (*Doc. 15, "Answr."*). Additionally, all parties agree that the proceedings and pleadings filed in a state court foreclosure case, *Deutsche Bank v Cameron*, Case No. 09CV008043, pending in the Court of Common Pleas for Franklin County, Ohio (the "Foreclosure Action") and in a bankruptcy case, *In re Elizabeth Annette Cameron*, Case No. 10-50991, filed in the United States Bankruptcy Court for the Southern District of Ohio at Columbus (the "*Bankruptcy Case*"), are materially relevant and the Court here may take judicial notice of such to resolve the instant Motion. Affidavits and certain portions of deposition testimony given by Plaintiff and Ocwen's designated corporate representative are also relied upon and cited by the parties.[3]

There is no dispute that the Plaintiff and her ex-husband borrowed money on August 17, 2004 to buy a home located at 5005 Majestic Dr., Columbus, Ohio and executed a note to evidence that loan and a mortgage to secure payment. (*Compl. ¶ 3; Answ. ¶ 3*; the note and mortgage are collectively referred to hereinafter as the "*Loan*"[4]). Deutsche Bank, as trustee,

---

[3] Deposition of Ocwen designated corporate representative Howard Handville, dated January 22, 2019 ("*Handville Depo.*"), attached as Exhibit 1; Deposition of Elizabeth Cameron, dated January 23, 2019 ("*Cameron Depo.*"), attached as Exhibit 2; Affidavit of Howard R. Handville in Support of Defendants' Motion for Summary Judgment, Doc. 27-1 ("*Handville Aff.*"); and Affidavit of Elizabeth Cameron, attached as *Exhibit 3*.

[4] *See also*, Affidavit of Howard R. Handville in Support of Defendants' Motion for Summary Judgment, Doc. 27-1, ¶¶ 5-8. This affidavit is hereinafter referenced as "*Handville Aff.*"

owns the Loan. (*Id.*). Ocwen began servicing the Loan on March 11, 2013 and is the current servicer of the Loan. (*Id.*). Prior to that date, the Loan was serviced by AHMSI (a/k/a "Homeward Residential"). (*Handville Aff. ¶ 9*).

Plaintiff and Robert Cameron were divorced on December 15, 2008.[5] Thereafter, Plaintiff encountered financial difficulties, fell into default of the Loan, and on May 29, 2009, Deutsche Bank initiated the Foreclosure Action against Plaintiff. (*Compl. ¶23; Answ. ¶23*; *see also proceedings in the Foreclosure Action generally; Cameron Aff. ¶¶5-8*). On or about October 14, 2009, the Foreclosure Action was referred for mediation (the "Foreclosure Mediation"). (*Compl. ¶24, Answ. ¶24*). At that mediation, on November 2, 2009, Deutsche Bank and Plaintiff executed an agreement to mediate ("Mediation Agreement"), a copy of which is attached as Exhibit 3 to the Complaint (*Compl. ¶25, Ex. 3; Answ. ¶25*). Deutsche Bank agreed to mediate with Plaintiff and did not require the participation of her ex-husband, Robert Cameron. (*Cameron Aff. ¶¶9-11)*. This fact is evidenced by referencing the Mediation Agreement which was not executed by Robert Cameron. (*Compl. ¶25, Ex. 3; Answ. ¶25*). At the mediation, Deutsche Bank and Plaintiff agreed to a temporary payment plan ("TPP") calling for three payments due monthly starting December 1, 2009. It was further agreed that "[a]t the end of the trial period, a loan modification will be considered." (*Id. at p. 2, ¶1; Cameron Aff. ¶¶9-11*). The Mediation Agreement further provided: "[t]he loan modification must be signed by both borrowers." (*Id. at p.2, ¶2; Cameron Aff. ¶¶9-11*).

On February 1, 2010, Plaintiff commenced the Bankruptcy Case. (*See Chapter 13 Voluntary Petition, Doc. 1, Bankruptcy Case; Cameron Aff. ¶13*). On September 13, 2010,

---

[5] The Motion states erroneously that this decree is attached as *Exhibit 2* to the Motion. It is attached as (*Doc. 27-14*).

AHMSI filed in the Bankruptcy Case its Motion for Order Authorizing Loan Modification of the Secured Creditor, American Home Mortgage Servicing, Inc. ("First Motion to Authorize") (*Bankruptcy Case, Doc. 36*). In this pleading, AHMSI moved the bankruptcy court to approve the terms of a Loan Modification Agreement, a copy of which it represents to the Bankruptcy Court is attached to the First Motion to Authorize and which is also attached as Exhibit 4 to the Complaint and referenced as Modification #1. The First Motion to Authorize states: **"The parties agree to the terms and conditions set forth in the attached Loan Modification terms."** (*Id.*). The Exhibit A attached to Modification #1 sets forth the financial details of the agreed upon modification which called for a modified payment of $927.48 comprised of principal and interest of $674.32 and escrows of $273.63 with an effective date of June 1, 2010. (*Id.*). Nothing in either the First Motion to Authorize or Exhibit A to that motion indicates that further documents must be executed by anyone. (*Cameron Aff. ¶¶14-15).* Notably, AHMSI omitted Robert Cameron as a signatory to the agreement, notwithstanding the position it had taken in the Mediation Agreement that his signature would be required. On October 25, 2010, the Bankruptcy Court entered its order granting the Motion to Authorize. (*See Bankruptcy Case, Doc, 39; see als*o *Exhibit 5 to Plaintiff's Complaint*; *Cameron Aff. ¶15*). Consistent with the terms of Modification #1, Plaintiff filed an Amended Schedule J which set forth the modified monthly mortgage payment of $927.48, the same amount as contained in Modification #1. (*See Bankruptcy Case*, *Doc. 44).* In addition to modifying Schedule J, Plaintiff filed a Motion to Modify her confirmed Chapter 13 Plan pursuant to 11 U.S.C § 1329 on December 6, 2010 which was granted on January 26, 2011. (*See Bankruptcy Case*, *Doc. No. 60*). The Plan was modified to provide that Plaintiff would pay the Loan according to the terms set forth in Modification #1.

(*Id.*). At no time when either the Motion to Modify or the Amended Schedule J was filed did either Deutsche or AHMSI object to the changes made by the Plaintiff in her schedules or her bankruptcy plan which incorporated Modification #1. (*See generally, docket, Bankruptcy Case*).

The Motion is silent as to what Deutsche Bank and AHMSI did to board and implement Modification #1. (*See Handville Depo. pp 65-69*). There is no evidence that they did anything. (*Id.*). Plaintiff has established conclusively what she did. (*Cameron Aff. ¶¶13-19*). Modification #1 was approved by the Bankruptcy Court. Neither Deutsche nor AHMSI filed an objection to Plaintiff's Motion to Modify Plan pursuant to 11 U.S.C § 1329. Plaintiff commenced payment of the amount provided by her court approved plan and Modification #1. (*Cameron Aff. ¶19*).

It is apparent that Modification #1 was not in fact implemented by Deutsche Bank or AHMSI. This is evidenced by the fact that on April 29, 2011, AHMSI sent a letter to Plaintiff stating that Plaintiff qualified for a Home Affordable Modification. (*Compl. ¶33, Ex. 6; Cameron Aff. ¶16*). Attached was Modification #2. (*Id.*). Significantly, this letter was directed solely to Elizabeth Cameron and not jointly to her and her ex-husband, Robert Cameron. (*Id.*). This is consistent with the fact that Modification #1 (which AHMSI had drafted and filed with the Bankruptcy Court) had removed Robert Cameron from the Loan. Moreover, the agreement attached to the April 29, 2011 letter provided only for the signature of the Plaintiff and not the signature of Robert Cameron. (*Id.*). Plaintiff signed and accepted Modification #2 and sent this agreement to AHMSI (*Cameron Aff. ¶16*). Modification #2 proposed a significantly reduced payment of $452.79. (*See Modification #2; Handville Depo. p.71*). All parties agreed to Modification #2. This is evidenced by several facts. First, AHMSI filed a Motion for an Order Authorizing Loan Modification on July 15, 2011. ("Second Motion to Authorize;" *Bankruptcy*

*Case, Doc. 55*). The Chapter 13 Trustee objected to the Second Motion to Authorize citing AHMSI's failure to attach the full loan modification to the Motion. (*See Bankruptcy Case*, *Doc. 56*). AHMSI then filed an Amended Second Motion to Authorize on September 6, 2011 which contained the full 13 pages of Modification #2. (*See Bankruptcy Case*, *Doc. 61*). In both the Second Motion to Authorize and the Amended Motion to Authorize filed on September 6, 2011, AHMSI moved the bankruptcy court to approve the terms of which were attached in Exhibit A to the both Motions. (*Id; see also Bankruptcy Case, Doc. No. 61*). Significantly, Exhibit A in both Motions states the borrower is Elizabeth Cameron. Neither agreement submitted to the Bankruptcy Court reference to her ex-husband Robert Cameron. (*Bankruptcy Case, docket, Doc. 56, 61*). AHMSI told Plaintiff that Robert Camron's signature was not required when she spoke with representatives by telephone. (*Cameron Depo. pp.87-88; Cameron Aff. ¶18*). The agreement attached to the Amended Motion to Authorize is the same agreement that had been sent to the Plaintiff on April 29, 2011 by AHMSI. (*Compare Compl. ¶33, Exhibit 6 with Doc. 61, Ex. 1, Bankruptcy Case*). Again, both only call for the signature of Elizabeth Cameron. (*See also, Handville Depo. pp. 177-181*). By filing the Second Motion to Approve, and subsequently amending that motion to include the full 13 page Modification #2, Deutsche Bank and AHMSI held out and represented to the Court that the parties had agreed to the terms of Modification #2. Moreover, Plaintiff's conduct is consistent with her acceptance. Plaintiff filed an Amended Schedule J on August 30, 2011, which reflected the reduced mortgage payment at Line 1 of Schedule J as $452.79, despite the right to object to the change in Schedule J AHMSI filed no such objection. (*Bankruptcy Case, docket, Doc. 60; Handville Depo. pp. 177-178*). That is the same amount stated in Modification #2 and Exhibit A attached to both the Second Motion to

Authorize and the Amended Second Motion to Authorize. (*Bankruptcy Case, docket, Doc. 56, 61*).

On October 5, 2011, AHMSI sent a letter to Plaintiff stating "[AHMSI] has processed [Modification #2] on the [Loan] and made the required changes to its Loan Servicing system." (*Compl. ¶37; Answr. ¶37; Handville Depo. pp. 38-40, pp. 181-183*). Thereafter, Plaintiff commenced making the monthly payment as required by Modification #2, until her payments were refused. (*Compl. ¶¶38-43; Handville Depo. pp 72-75 and payment history attached as Exhibit 22 to Handville Depo.*). The next day, on October 6, 2011, AHMSI sent a letter to Plaintiff stating "AHMSI did not receive the executed Home Affordable Modification by the noticed due date." (*Handville Aff. Exhibit 1-E*). This was followed by another letter to Plaintiff from AHMSI dated November 1, 2011 again claiming that the servicer had not received a fully executed agreement (*Handville Aff. Ex. 1-F*).  Both of these letters were dispatched to Plaintiff ***after*** she had accepted the Modification #2, ***after*** that agreement had been presented to the Bankruptcy Court in a form which did not require Robert Cameron's signature, and ***after*** Robert Cameron had effectively been removed from the Loan by Modification #1 agreed to by the parties and approved by the Bankruptcy Court. AHMSI asserted, falsely and after the fact, in paragraphs 13 and 14 of the Handville Affidavit that the signature of Robert Cameron was required. (*Handville Aff. ¶¶13-14*).  This fact, which is here disputed (*Cameron Aff. ¶ 16*), alone precludes summary judgment.

What followed was Plaintiff's erstwhile efforts to have Ocwen, who had become the Loan's servicer as of March 11, 2013, honor Modification #2.  Instead, Ocwen reactivated the Foreclosure Action, sought and obtained an *ex-parte* judgment, and did all it could to take

Plaintiff's home from her. (*See Foreclosure Action, generally*). Plaintiff retained counsel, expended money and time to have the foreclosure judgment vacated and to seek to have Ocwen correct servicing errors by sending Ocwen a notice of error. (*Cameron Aff. ¶¶20-29*). When Ocwen failed to investigate the errors raised and did not correct those errors by reinstating the terms of Modification #1 and Modification #2, this suit followed. (*Id.*).

## III.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV.    ARGUMENT

### A.    Summary Judgment Must be Denied as to Counts I and II Because Plaintiff Can Establish that Modification #1 and Modification #2 are Enforceable Contracts Which Defendants Breached.

Defendants argue for summary judgment as to Counts I and II on the basis that neither Modification #1 nor Modification #2 are enforceable contracts because neither was executed by Robert Cameron and Ocwen. This argument takes a simplistic view of contract formation and

fails to account for exceptions to Ohio's Statute of Frauds, the parties' performance of each agreement, the fact that Deutsche Bank and Ocwen are bound by the judicial admissions of AHMSI made in the Bankruptcy Case, and that if a signature had been required as a condition to contract, it was waived.

**1.      Modification #1 and Modification #2 Are Enforceable Contracts.**

Under Ohio law, the elements of a breach of contract claim are: 1) the existence of a contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) damage or loss to the plaintiff as a result of the breach. *Ohio Nat'l Life Assur. Corp. v. Crescent Fin. & Ins. Agency, Inc.,* No. 1:15-cv-727, 2016 U.S. Dist. LEXIS 19608, at *3, 2016 WL 659153 (S.D. Ohio Feb. 18, 2016) (citing *V&M Star Steel v. Centimark Corp.,* 678 F.3d 459, 465 (6th Cir. 2012)). "Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Williams v. Ormsby,* 966 N.E.2d 255, 258 (Ohio 2012).

Defendants concede that AHMSI offered to modify the Loan in 2010 (Modification #1) and in 2011 (Modification #2). The dispute centers on whether those offers were ever accepted and a contract formed. At best, the answer is that this is a disputed issue of fact which precludes summary judgment. Yet, multiple facts not in dispute undermine movants' argument.

First the Defendants are judicially estopped by the First Motion to Authorize and the Order Modifying Plaintiff's Chapter 13 Plan from taking the position that Modification #1 is not an enforceable contract. 11 U.S.C § 1329; *see generally*, *In re Nolan*, 232 F.3d 528, 532 (6th Cir. 2000). The First Motion to Authorize states unequivocally "[t]he parties agree to terms and

conditions set forth in attached Loan Modification Agreement terms." (*See First Motion to Authorize, Doc. 36, Bankruptcy Case, ¶2*). The only relevant parties in the Bankruptcy Case were the Plaintiff, Elizabeth Cameron, the debtor, and AHMSI, as servicer for Deutsche Bank and predecessor in interest to Ocwen. Attached to the Motion to Authorize was a Schedule A Modification Summary setting forth the essential financial terms of the Loan as modified, including the total payment, a breakdown of principal and interest, escrows, rate of interest remaining term, unpaid principal balance and maturity date. In short, all terms of the parties contract were set forth in that exhibit and acknowledged by AHMSI in its representations to the Bankruptcy Court to be the "Loan Modification Agreement terms." All essential terms of a contract were present as was evidence that the parties had agreed by assent to be bound

"Judicial estoppel prevents a party from 'from abusing the judicial process' by asserting inconsistent positions at different stages of the case." *Prime Finish, LLC v. ITW Deltar IPAC*, (6th Cir. 2019) (internal citations omitted); *White v. Wyndham Vacation Ownership, Inc.,* 617 F.3d 472, 476 (6th Cir. 2010) ("The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'") (quoting, in part, *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808 (2001)). In the context of bankruptcy proceedings:

> "[J]udicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" Furthermore. . ., "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence."

*Id.* at 776 (quoting, in part, *Browning v. Levy,* 283 F.3d 761, 775-76 (6th Cir. 2002) and citing *New Hampshire,* 532 U.S. at 753, 121 S.Ct. 1808). It is an "equitable doctrine that preserves the

integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1218 (6th Cir. 1990). In the instant case, the doctrine of judicial estoppel bars movants from denying that Modification #1 was a contract - because any factual argument is inconsistent with the representations AHMSI made to the Bankruptcy Court which resulted in that Court's entry of an order approving the First Motion to Authorize.

Judicial estoppel also precludes Defendants from contesting the enforceability of Modification #2. Modification #2 was also presented to the Bankruptcy Court in the Second Motion to Authorize representing that the terms of the parties agreement were set forth in an exhibit to the motion. As subsequently amended, the terms of that agreement are identical to the document executed by Plaintiff. (*Compare Amended Second Motion to Authorize, Ex.A. to Motion, Exhibit 5, Doc. 27-5*).

Even more telling is the October 5, 2011, letter AHMSI sent to Plaintiff stating "[AHMSI] has processed [Modification #2] on the [Loan] and made the required changes to its Loan Servicing system." (*Compl. ¶37; Answ. ¶37; Handville Depo. pp. 38-40, pp. 181-183*). This factual admission contradicts Defendants' position in their Motion for Summary Judgment entirely.

### 2. Defendant Ocwen and Defendant Deutsche Breached the Contracts.

Plaintiff has established breach of Modification #1 and Modification #2. (*See generally*, *Handville Depo. pp 66-183.*). It is undisputed that Ocwen returned or refused to accept payments that Ocwen received that were made by the Plaintiff pursuant to the Loan as modified. (*Cameron*

*Aff. ¶21)*. Moreover, Ocwen reactivated the Foreclosure Action notwithstanding the fact that it had information that its records and those of the predecessor loan servicer may have been inaccurate as to the status of loss mitigation, the amounts due, and the period for which the Loan was claimed to have been in default. (*See Handville Depo. ¶¶143-177*).

Defendants' argument that Plaintiff had a pre-existing duty to pay the Loan is misplaced. It ignores the fact that the Plaintiff's obligation on the Note was subject to the confirmation order of her Chapter 13 Plan. 11 U.S.C. § 1327. The confirmed plan altered the Plaintiff's existing obligations under the Loan and allowed her initially to "cure" the Loan's arrearages in the Plan. Plaintiff and Defendants, through AHMSI, as demonstrated by Order Granting the Motion to Modify Plan, the Order Granting the first Motion to Authorize, and the filing of the Second Amended Motion to Authorize, then affirmatively modified Plaintiff's obligations on the Note. Based on the record in this case it is Ocwen, and not the Plaintiff who initially breached Modification #1 and Modification #2.

### 3. Plaintiff Suffered Damages Resulting from Defendants' Breach.

The Motion asserts that the Complaint seeks only emotional damages, and as such is deficient. This is simply inaccurate. Plaintiff remitted payments to AHMSI and Ocwen, agents for Deutsche Bank, which she contractually agreed would be applied in accordance with the Loan as modified. (*Compl. ¶¶ 38, 43; Handville Depo., pp. 34-35; Cameron Aff, ¶¶19-22*). The Foreclosure Action was reactivated and Plaintiff had to retain counsel and incurred fees to have a foreclosure judgment vacated. (*Cameron Aff, ¶¶22-28)*. Plaintiff further details her damages in paragraph 67 of her Complaint, setting forth claimed damages for attorneys' fees and costs incurred in the Foreclosure Action, attorneys' fees and costs incurred with respect to the

preparation of notices of error, lost time, travel expenses to and from court, and detrimental impact on her credit and delay in the realization of a fresh start. (*Compl. ¶¶ 67, 82-85, 92-95*).

Plaintiff further expands on her damages in her affidavit (*Cameron Aff. ¶29*):

> During this whole time all I wanted was to pay what I owed and to live in my home in peace. Instead, I live with constant concern, worry and anxiety. I endure emotional distress driven by the daily ongoing fear that I might lose my home. Strangers drive by my house taking pictures which scares and embarasses me and makes me very upset. My children and I have experienced loss of sleep, anxiety, depression, and embarrassment. All of this has been caused by the actions of my loan servicer because they will not honor the contract with me and will not agree to correct their mistake after I and my attorneys have spent years trying to show them what they have done wrong and ask them repeatedly to fix it.
> .
> The Motion proffers no facts to contradict these factual allegations, only a blanket denial.

As such, movants have failed to meet their summary judgment burden.

### B. Summary Judgment Must be Denied as to Counts III Because Plaintiff Can Establish RESPA Violations.

"RESPA is a consumer protection statute that regulates the real estate settlement process." *James v. Ocwen Loan Serv., LLC*, No. 1:17-cv-0501, 2017 U.S. Dist. LEXIS 203790 at *9, 2017 WL 6336760 (S.D. Ohio Dec. 12, 2017), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 35965, 2018 WL 1173035 (internal quotations omitted). Congress intended RESPA "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." *Id.* (quoting 12 U.S.C. § 2601(a)). "Although the 'settlement process' targeted by the statute was originally limited to the negotiation and execution of mortgage contracts, the scope of the statute's provisions was expanded in 1990 to encompass loan servicing.' " *Id.* (quoting *Marais v. Chase Home Fin. LLC,* 736 F.3d 711, 719 (6th Cir.

2013) (other quotations omitted)). "As a remedial statute, RESPA is construed broadly to effectuate its purposes." *Marias,* 736 F.3d at 719 (internal quotations omitted).

Regulation X consists of the Mortgage Servicing Rules promulgated by the Consumer Financial Protection Bureau ("CFPB") pursuant to § 1022(b) of the Dodd-Frank Act, 12 U.S.C. § 5512(b), and RESPA, 12 U.S.C. § 2601, *et seq. Cooper v. Fay Serv., LLC*, 115 F. Supp.3d 900, 903 n.6 (S.D. Ohio 2015). Regulation X imposes certain obligations on a loan servicer with respect to loss mitigation generally and the processing of a borrower's loan modification application. *James,* 2017 U.S. Dist. LEXIS 203790, at *10 (internal citations omitted).

"Whoever fails to comply with any provision of [RESPA] shall be liable to the borrower for each such failure[.]" 12 U.S.C. § 2605(f); *see Moore v. Caliber Home Loans, Inc.*, No. 1:14-cv-852, 2015 U.S. Dist. LEXIS 117737, at *22-23 (S.D. Ohio Sep. 3, 2015) ("[A] company's failure to comply with three provisions of the statute can render them liable for separate damages for each such failure"). If liability is established, "an individual may recover actual damages, and any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of RESPA and Regulation X, in an amount not to exceed $2,000." *James,* 2017 U.S. Dist. LEXIS 203790, at *10 (citing 12 U.S.C. § 2605(f)(1)). "An individual also may be awarded the costs of the action and reasonable attorneys' fees." *Id.* (citing 12 U.S.C. § 2605(f)(3)).

Ocwen contends that its response to Plaintiff's notice of error bannot be deemed insufficient because no response was required if the alleged error is duplicative. This argument is undermined by simply reading the statues. 12 C.F.R. § 1024.35(g)(2) requires a servicer who claims a notice is duplicative to "**notify the borrower of its determination in writing not later**

**than five days (excluding legal public holidays, Saturdays, and Sundays) after making such**

**determination.**" (emphasis added). Ocwen does not claim to have sent such notification. *See*

*Coppola v. Wells Fargo Bank, N.A. (In re Coppola)*, 596 B.R. 140, 161 (Bankr. D.N.J. 2018)

("Similarly, Wells Fargo did not notify the Debtor that any of the exceptions set forth in §

1024.36(f)(2) apply. Thus, § 1024.36(a) applies and requires Wells Fargo to provide the

requested information."); *McMahon v. JPMorgan Chase Bank, N.A.*, No.

2:16-cv-1459-JAM-KJN, 2017 U.S. Dist. LEXIS 63501, at *10 (E.D. Cal. Apr. 25, 2017)

("SPS's argument ignores the plain text of the regulation, which states that a servicer has to

notify a borrower in writing if the servicer determines an NOE is duplicative."). Ocwen's April

17, 2018 response to the February 5, 2018 notice of error does not reference 12 C.F.R. §

1024.35(g) or the 2013 response.

Moreover, Ocwen's obligations to investigate prior to the January 10, 2014 enactment of

Regulation X were materially different that those imposed after the 2014 enactment of

Regulation X. The court in *Wilson v. Bank of Am., N.A.*, explains:

> [P]re-Regulation statutory language required nothing more than "an investigation"
> and a "written explanation" that the servicer believes supports its determination
> that the account is correct. Regulation X, however, altered the landscape of those
> obligations. For example, in response to a Notice of Error, a servicer must now
> conduct a "reasonable investigation." The addition of the word "reasonable"
> seemingly imposes a substantive obligation that is not satisfied by the mere
> procedural completion of some investigation followed by a written statement of
> reasons.
>
> […]
>
> Moreover, the servicer must now provide the borrower "with a written
> notification that includes a statement that the servicer has determined that no error
> occurred, a statement of the reason or reasons for this determination, a statement
> of the borrower's right to request documents relied upon by the servicer in
> reaching its determination, information regarding how the borrower can request

15

such documents, and contact information, including a telephone number, for further assistance." 12 C.F.R. § 1024.35(e)(1)(i)(A).

48 F. Supp. 3d 787, 804-805 (E.D. Pa. 2014); *Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1191 (S.D. Fla. 2015), *aff'd*, 839 F.3d 1003 (11th Cir. 2016); *Weber v. Seterus, Inc.*, No. 16 C 6620, 2018 U.S. Dist. LEXIS 51490, at *23 (N.D. Ill. Mar. 28, 2018); *McGahey v. Fed. Nat'l Mortg. Ass'n*, 266 F. Supp. 3d 421, 440 (D. Me. 2017) ("Because Regulation X was promulgated to implement the Dodd–Frank Wall Street Reform and Consumer Protection Act, it is reasonable to interpret the regulation's added qualification that investigations be 'reasonable' as expanding the substantive obligations of servicers under RESPA.").

In the instant case, it is evident that there is a factual dispute as to the reasonableness of Ocwen's investigation. Ocwen did not correct the account or explain why the account is correct. Ocwen states in its response that it "has been unable to determine why Modification #1 and Modification #2 were not implemented by AHMSI, and why the Loan was not boarded with Ocwen as modified by Modification #2." Ocwen's designated representative offered further support for the conclusion that the investigation it did conduct was not reasonable. (*See Handville Depo. pp. 120-122.*) At best, the reasonableness of Ocwen investigation into the errors raised by Plaintiff's notice of error is a disputed question of fact which precludes summary judgment.

With respect to damages, Defendants again argue that Plaintiff fails to assert damages resulting from the alleged RESPA violations. This is factually inaccurate. Plaintiff alleges emotional distress. (*Compl. ¶67(e); Cameron Aff. ¶29*). In the Sixth Circuit actual damages under RESPA may include emotional damages. *Houston v. U.S. Bank Home Mortg. Wisc. Serv.*, 505 F. App'x 543, 548 (6th Cir. 2012). To establish a RESPA claim, a plaintiff must present

evidence to establish a causal link between the servicer's noncompliance and the claimed damages. *Miller v. Caliber Home Loans, Inc., No.* 3:16-cv-621, 2018 U.S. Dist. LEXIS 25504, at *11, 2018 WL 935439 (W.D. Ky. Feb. 16, 2018) (citations omitted). Plaintiff claims that she has experienced a tremendous emotional toll due to Ocwen's RESPA violations. (*Compl. ¶67(e); Cameron Aff. ¶29*). Specifically, she "became caught in a homeowner's nightmare" (*Compl. ¶13*), brought suit "to put an end to the constant concern, worry and anxiety" (*Compl. ¶66*), "endures and continues to endure severe emotional distress ...driven by the daily ongoing fear that she might lose her Home…" which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant and persistent emotional distress." (*Compl. ¶67(e); Cameron Aff. ¶29*).

### C. Summary Judgment Must be Denied as to Counts IV Because Plaintiff can Establish FDCPA Violations.

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statement must be one that "tend[s] to mislead or confuse the reasonable unsophisticated consumer." *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326-327 (6th Cir. 2012). 15 U.S.C. § 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." "Section 1692f is 'intended to cover actionable debt collection practices that may not be expressly addressed' in other sections." *Finley v. Ocwen Loan Servicing, LLC*, No. 1:17-CV-02561, 2018 U.S. Dist. LEXIS 59920, at *14 (N.D. Ohio Apr. 9, 2018). "Section 1692f 'serves a backstop function, catching those 'unfair practices' which somehow manage to slip by §§ 1692d & 1692e.' "

*Newton v. Portfolio Recovery Assocs., LLC*, No. 2:12-cv-698, 2014 U.S. Dist. LEXIS 11490, at *28 (S.D. Ohio Jan. 30, 2014).

The FDCPA prevents false representations of the "character, amount, or legal status" of the Loan and threatening "to take any action that cannot legally be taken." 15 U.S.C. § 1692e(2), (5). Ocwen reactivated the Foreclosure Action, sought and obtained an ex-parte judgment, and did all it could to take Plaintiff's home from her. Plaintiff was misled and confused by Ocwen's actions, because she "did not understand what was happening" when she "learned that the foreclosure case that had been filed against [her] was restarted and that [she] was in danger of losing [her] home again" because she "made a contract to pay [her] loan and [she] had lived up to [her] end of the deal by making all the payments that [she] supposed to make." (*Cameron Aff, ¶¶ 27-28*). Any reasonable homeowner would be misled and confused by Ocwen's conduct.

The issue is not whether or not Plaintiff "knows she owes money on the Loan" but rather Ocwen's false representations that the Loan was in default and the amount claimed was in error. (*Compl. Doc. 1, ¶ 121*). Likewise, Plaintiff's knowledge that Robert Cameron did not sign any modification does not change the fact that Ocwen reactivated and pursued the Foreclosure Action. At the very least, Ocwen's actions are unfair or unconscionable means to collect on the Loan because, at that time, Ocwen was "unable to determine why [Modification #1] and [Modification #2] were not implemented by AHMSI, and why the Loan was not boarded as modified by [Modification #3]." *See* Ocwen's Response to the NOE, Dkt. 1, Exhibit 16. Ocwen reactivated the Foreclosure Action and moved towards sheriff's sale without even having the correct or complete servicing records.

Any FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d) *Purnell v. Arrow Fin. Servs., LLC*, No. 07-1903, 2008 U.S. App. LEXIS 25488, at *9 (6th Cir. Dec. 16, 2008). Discrete violations of the FDCPA within the limitations period are not time barred. *Id.* at *10.

The Complaint was filed on May 2, 2018. Plaintiff is required to show that Ocwen's FDCPA violations occurred on or after May 2, 2017 to avoid the statute of limitations. Plaintiff pleads several discrete violations of the FDCPA that occurred on or after May 2, 2017. (Dkt. 1, ¶ 131). On June 30, 2017, MDK moved to reopen the Foreclosure. (Dkt. 1, ¶ 48). On July 26, 2017, MDK moved for default judgment against Plaintiff. (Dkt. 1, ¶ 49). On August 8, 2017, MDK filed a Praecipe to Issue Order of Sale in the Foreclosure. (Dkt. 1, ¶ 49).

There can be no "continuing and ongoing" violation based on the original foreclosure action brought in 2009 because Plaintiff is not claiming that its filing was a violation of the FDCPA. Further, Plaintiff is not claiming that any conduct from 2013 is actionable. In the context of the FDCPA claim, Plaintiff is not referencing Defendants' conduct in failing to implement the two modifications, Ocwen's 2013 QWR response, Ocwen's March 15, 2013 mortgage statement, or Ocwen's December 2013 communication. The fact that Plaintiff knew that Ocwen would not implement the modifications is not relevant. *Craig v. Meyers*, No. 1:09-cv-031, 2009 U.S. Dist. LEXIS 96919, at *8 (S.D. Ohio Sep. 3, 2009) ("Defendants argue that if the same information from a previous violation is included in a subsequent debt collection activity, it is not a separate violation… This reasoning is flawed because the Sixth Circuit has not construed the limitations period so narrowly."). The discrete actions that Plaintiff complains

about are Ocwen's decision to reopen and maintain the Foreclosure, as a means to attempt to collect amounts that were not due in June, July, and August 2017 through the sale of the Home.

## V.     CONCLUSION

The Motion is not well founded. Disputed, material facts preclude entry of summary judgment in Defendants' favor. The Motion must be denied and the Court should grant such other and further relief as is just and proper.

*Respectfully Submitted*,

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Emily White (0085662)
Brian D. Flick (0081605)
DannLaw
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Elizabeth Cameron*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via the Court's Electronic Filing System on all parties and counsel of record on this 2nd day of May, 2019.

Joseph E. Culleiton
Sarah A. Wilson
Blank Rome, LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
swilson@blankrome.com
*Counsel for Defendants Ocwen and Deutsche Bank as Trustee*

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
DannLaw
*Counsel for Plaintiff Elizabeth Cameron*