# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Elizabeth Cameron,

     Plaintiff,                   :     **Case No. 2:18-cv-428**

     v.                         **Judge Sarah D. Morrison**
                                 :     **Chief Magistrate Judge Elizabeth P. Deavers**

Ocwen Loan Servicing, LLC, *et al.*,

     Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 27.) Plaintiff filed a Memorandum in Opposition to the Motion (ECF No. 30), and Defendant filed a Reply (ECF No. 31). The matter is now ripe for decision.

## I.      STATEMENT OF THE FACTS

In 2004, Plaintiff Elizabeth Cameron and her then-husband Robert Cameron obtained a mortgage (the "Loan") on their personal residence (the "Property"). (ECF Nos. 27-2, 27-3.) The Loan was originally held by Ameriquest Mortgage Company ("Ameriquest"). (*Id.*) Defendant Deutsche Bank National Trust Company ("Deutsche") now holds the Loan as Trustee for Ameriquest. (Answer, at 1, ECF No. 15.)

In 2008, the Camerons divorced. (ECF No. 27-14.) As a part of the divorce decree, Ms. Cameron was awarded the Property "free and clear of any claims of" Mr. Cameron. (*Id.* at 5.) Mr. Cameron also released "any and all right, title or claim to said property" and was ordered to "quitclaim his interest in said property by quitclaim deed" to Ms. Cameron. (*Id.*) Mr. Cameron did as he was ordered, and by the close of 2008, Ms. Cameron was the sole owner of the Property. (Elizabeth Cameron Dep. 24:3–25:2, ECF No. 30-2.) However, Mr. Cameron's name

remained on "the original mortgage." (*Id.* 23:23-24:2.) At some point in time Ms. Cameron

provided a copy of her divorce decree to Defendant Ocwen Loan Servicing, LLC ("Ocwen"), the

servicer of the Loan from March 2013 to the present. (*Id.* 47:9–48:4.)

 On May 29, 2009, Deutsche filed a foreclosure action against the Camerons in the

Franklin County Court of Common Pleas (the "Foreclosure Action"). (ECF No. 27-16, at 1.)

Deutsche and Ms. Cameron engaged in a mediation, which culminated in a November 2009

agreement signed by Ms. Cameron and a Deutsche representative (the "Mediation Agreement").

(Cameron Dep. 40:5-13; ECF No. 1-3.) Mr. Cameron did not sign the Mediation Agreement, and

there is no evidence that he attended the mediation. (ECF No. 1-3.)

Pursuant to the terms of the Mediation Agreement, "[t]he parties agreed to a 3 month trial

period of payments" for December 2009, January 2010, and February 2010. (*Id.* at 2.) The

parties further agreed that a loan modification would be "considered" at the end of the trial

period, but it was stipulated that any such modification was required to be signed by both of the

Camerons. (*Id.* at 2.)

On February 1, 2010, Ms. Cameron filed a Petition for Bankruptcy pursuant to Chapter

13 of the Bankruptcy Code. (ECF No. 27-17, at 1.) As a result, the Foreclosure Action was

stayed shortly thereafter. (ECF No. 27-16, at 3.)

September 2010 – September 2011: The Proposed Modifications

At this point in time, the Loan was serviced by American Home Mortgage Servicing, Inc.

("AHMSI"), which ultimately changed its name to Homeward Residential ("Homeward").

(Howard Handville Dep. 16:6–23, ECF No. 30-1.) Over the course of the next several years,

AHMSI (and then Homeward) engaged in a mostly one-sided dialogue with Ms. Cameron

surrounding potential modifications of the Loan.

2

On September 13, 2010, AHMSI presented a proposed Loan Modification Agreement (the "September 2010 Modification") to the Bankruptcy Court for approval. (ECF No. 1-4.) The September 2010 Modification named the Camerons as co-borrowers and proposed a reduction in the monthly payments on the Loan from $969.33 to $927.48. (*Id.* at 8.) On October 25, 2010, the Bankruptcy Court issued an order "permitt[ing]" Ms. Cameron and AHMSI to enter into the September 2010 Modification. (ECF No. 1-5.) However, Ms. Cameron does not recall ever making monthly Loan payments in the amount of $927.48, (Cameron Dep. 57:4–58:16), and no evidence has been presented that she did so.

On December 2, 2010, AHMSI sent a letter addressed to both Camerons proposing another loan modification (the "December 2010 Modification"). (Handville Dep. 83:13-84:3.) This letter proposed modifying the Loan to require monthly payments in the amount of $452.79. (*Id.*) On December 7, 2010, Ms. Cameron—and only Ms. Cameron—signed the December 2010 Modification, agreeing to a monthly payment of $452.79 beginning on March 1, 2010 (the "Modification Effective Date"), a date that had, of course, already passed. (ECF No. 27-5.) Ms. Cameron had the December 2010 Modification notarized and submitted it to AHMSI. (*Id.*; Cameron Dep. 61:12–62:6.) The December 2010 Modification named both Camerons as co-borrowers, and it contained signature lines for AHMSI and for both Camerons. (ECF No. 27-5, at 1, 5.) Neither Robert Cameron nor AHMSI signed the December 2010 Modification. (*Id.* at 5.)

The December 2010 Modification says that it will not take effect until after the Modification Effective Date and until the Camerons received a copy of the December 2010 Modification signed by AHMSI. (*Id.* at ¶ 2B.) The December 2010 Modification also says that all living signatories to the Loan must sign the modification agreement unless 1) "the borrower

and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree" or 2) "the Lender has waived this requirement in writing." (*Id.* at ¶ 4A.)

On April 29, 2011, AHMSI sent a letter (the "April 2011 Letter") to Ms. Cameron—and only Ms. Cameron—indicating that she was eligible for a Home Affordable Modification. (ECF No. 1-6, at 1–2.) The letter says that in order to accept this offer, she had to sign and return both copies of the attached modification agreement by May 19, 2011. The terms of the modification agreement appear to be identical to those in the December 2010 Modification, including the long-since-passed Modification Date of March 1, 2010. (*Compare* ECF No. 1-6, *with* ECF No. 27-5.) However, unlike the December 2010 Modification, the offer attached to the April 2011 Letter names Ms. Cameron as the sole borrower and does not require Mr. Cameron's signature. (ECF No. 1-6, at 4, 8.) There is no explanation for why this offer did not require Mr. Cameron's signature, but a representative for Ocwen testified that it is "outside of normal requirements." (Handville Dep. 182:11–15.)

On July 15, 2011, AHMSI presented another proposed Loan Modification Agreement to the Bankruptcy Court for approval, the terms of which are the same as in the December 2010 Modification. (ECF No.1-7, at 3.) Like the April 2011 Letter, this proposed Loan Modification Agreement identifies only Ms. Cameron as the borrower. (*Id.*) Then, on September 6, 2011, AHMSI filed an Amended Motion for Order Authorizing Loan Modification, stating that its terms are attached. (ECF No. 1-8.) However, the terms are not attached in the version filed with this Court, and it is unclear whether the terms were actually provided to the Bankruptcy Court. (*Id.*) The Bankruptcy Court never ruled on these motions. (ECF No. 27-17.)

<u>October 2011 – October 2016: After the Proposed Modifications</u>

On October 5, 2011, AHMSI sent a letter addressed to both Camerons notifying them that AHMSI had "processed the Modification Agreement on the above-referenced loan and made the required changes to its Loan Servicing system" and enclosing "a copy of the signed Modification Agreement for [their] records." (ECF No. 1-9.) The letter also notified the Camerons that their October Loan payment would be in the amount of $504.96. (*Id.*) However, it is not clear whether a signed agreement was actually attached, and, if it was, what the terms of the agreement were. In fact, Ocwen denies that such a signed agreement ever existed. (Handville Dep. 39:4–40:5.) While Ms. Cameron recalls receiving the October 2011 letter, she is unclear as to whether she received a signed agreement with the letter. (Cameron Dep. 58:23–60:18.)[1] She does acknowledge that even if she did receive a "signed Modification Agreement," it was not signed by either her ex-husband or by AHMSI. (Cameron Dep. 60:25–61:6.)

The next day, on October 6, 2011, AHMSI sent a letter addressed to both Camerons notifying them that they were ineligible for a loan modification because "AHMSI did not receive the executed Home Affordable Modification Agreement by the noticed due date." (ECF No. 27-6.) Ms. Cameron does not recall receiving this letter and believes that if she had she would have immediately called AHMSI. (Cameron Dep. 64:15–18, 69:4–9.) It is also not clear which modification agreement this letter was referencing.

On November 1, 2011, AHMSI sent a letter addressed to both Camerons referencing a Home Affordable Modification Agreement dated October 13, 2011. (ECF No. 27-7.) The letter explained that the referenced agreement "required your signature(s)." (*Id.*) It also explained that AHMSI had not received a signed copy of the referenced agreement and that the referenced

---

[1] Ms. Cameron describes receiving an agreement, but she describes receiving an agreement that she signed and returned (not one for her to keep that was already signed).

agreement would be null and void if it were not returned to AHMSI by December 1, 2011. (*Id.*) Ms. Cameron recalls receiving this letter, but she did not understand it to mean that both she and her ex-husband's signatures were required to implement a modification to the Loan. (Cameron Dep. 83:16–84:23.)

Throughout 2011 and 2012, Ms. Cameron made payments of between $453 and $500 every month, and AHMSI and Homeward accepted each of those payments towards the Loan. (Handville Dep. 72:22–75:9.) During this entire time period, Ms. Cameron remained in bankruptcy. Her bankruptcy was discharged on March 28, 2013. (ECF No. 27-17, at 3.)

On February 22, 2013, Homeward notified the Camerons that their Loan account was being transferred to Ocwen as of March 11, 2013. (ECF No. 1-12, at 18.) The letter specified that the terms and conditions of the Loan would not be changing. (*Id.*) Ocwen contends that when it took over the Loan it did not have the necessary documents to implement any modifications to the Loan. (Handville Dep. 42:5–11.) Ocwen maintains that the reason why it could not implement any modifications to the Loan was because Ocwen requires that when the original note has two borrowers' signatures, both borrowers must execute the modification unless one of them is deceased. (*Id.* at 45:23–46:7.)

After Ocwen began servicing the Loan, it stopped accepting Ms. Cameron's payments because they were below what Ocwen considered to be the monthly payment. (*Id.* 75:10–76:6; ECF No. 1-10.) On May 20, 2013, Ms. Cameron's monthly Loan payment was rejected. (ECF No. 1-11, at 3.) Ms. Cameron's next three payments, in June and July, were rejected as well. (ECF No. 1-11, at 1, 2, 4.) Ms. Cameron made these payments pursuant to the terms of the December 2010 Modification. (Cameron Dep. 81:16–82:17.)

On November 1, 2013, Ocwen sent a letter to prior counsel for Ms. Cameron, Hillard Abroms, stating that there was no modification plan associated with the Loan. (ECF No. 1-12, at 27.) Because the Loan was in active foreclosure, Ocwen would not accept uncertified funds as Loan payments. (*Id.*) The letter continues: "As a result, the funds which were remitted towards the loan were rejected due to short [sic] for Reinstatement amount." (*Id.*) On November 15, 2013, Mr. Abroms sent a letter to Ocwen making similar arguments as are the basis for the instant Complaint. On December 30, 2013, Ocwen responded via letter, saying, without explanation, that "the prior servicer" had rejected "the Modification." (ECF No. 1-12, at 29–30.) Ocwen claims that during the course of this letter exchange it examined its records and could find no documents that were "executed by both the servicer and the borrower or the borrower's spouse. And, lacking those, [it] could not implement the modification." (*Id.* at 43:5–14.)

On July 27, 2016, Ocwen wrote to the Camerons explaining that there were defects in the "affidavit" submitted with their modification, specifically that a borrower's signature was missing. (Cameron Dep. 94:18–96:15.) Ms. Cameron received this letter and understood it to mean that Mr. Cameron's signature was missing and was needed. (*Id.* at 96:16–20.) Ms. Cameron contends that she did not know until at least 2016 that the December 2010 Modification had not been accepted because the form was missing her ex-husband's signature. (*Id.* at 85:25–86:10.) Managers at AHMSI had told her via telephone that his signature was not required. (*Id.* at 87:5–88:2.)

On October 6, 2016, Ocwen sent another letter addressed to both Camerons. (*Id.* at 99:6–17.) This letter referenced a modification offer from June 19, 2016, and stated that Ocwen had not yet received a completed affidavit regarding that modification offer. (*Id.* at 101:6–18.)

However, Ms. Cameron recalls completing an affidavit during this time period. (*Id.* at 101:25–102:3.)

<u>June 2017 – Present: Continuation of the Foreclosure Action, and the Notice of Error</u>

On June 30, 2017, Deutsche moved for a default judgment in the Foreclosure Action. (ECF No. 27-16, at 3.) On July 5, 2017, the Franklin County Court of Common Pleas granted that motion, and on August 8, 2017, counsel for Deutsche filed a Praecipe to Issue Order of Sale in the Foreclosure. (*Id.* at 2–3.)

On Monday, February 5, 2018, counsel for Ms. Cameron, Whitney Kaster, sent a "Notice of Error" to Ocwen for failing to honor the terms of the September 2010 and December 2010 Modifications and asking it to accept and properly apply Ms. Cameron's payments. (ECF No. 1-13.) Ocwen received this Notice of Error on Saturday, February 10, 2018, (ECF No. 1-14), and responded with an acknowledgment letter on Thursday, February 15, 2018, (ECF No. 27-12).

On Thursday, March 22, 2018, counsel for Ocwen, Sarah Wilson, responded to Ms. Kaster, advising that Ocwen was "in the process of conducting research and obtaining information necessary to respond to" the Notice of Error and that Ocwen would be responding within the next fifteen business days. (ECF No. 1-15.) On Tuesday, April 17, 2018, Ms. Wilson again responded to Ms. Kaster (the "Response Letter") advising that "Ocwen's investigation of the [identified] issues is ongoing" and that "Ocwen has been unable to determine why" the September 2010 and December 2010 Modifications "were not implemented by AHMSI, and why the Loan was not boarded with Ocwen as modified by" the December 2010 Modification. (ECF No. 1-16.) The Response Letter further explained that Ocwen was unable to locate a signed copy of the December 2010 Modification. (*Id.*)

On May 2, 2018, Ms. Cameron filed the instant complaint. (ECF No. 1.) Three weeks later, the Foreclosure Action was terminated, although the reason why is not entirely clear. (ECF No. 27-16, at 1.)

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The burden then shifts to the nonmoving party to "'set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "summary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## III.   ANALYSIS

Ms. Cameron has four remaining claims,[2] two claims against both Deutsche and Ocwen for breach of contract (Counts One and Two), one claim against Ocwen for a violation of Real Estate Settlement Procedures Act ("RESPA") Regulation X (Count Three), and one claim against Ocwen for a violation of the Fair Debt Collection Practices Act ("FDCPA") (Count Four). Defendants have sought summary judgment as to all four claims.

### A.   Breach of Contract Claims

A breach of contract claim requires proof that 1) there existed a binding contract, 2) the nonbreaching party performed its contractual obligations, 3) the other party failed to fulfill its contractual obligations without legal excuse, and 4) the non-breaching party suffered damages as a result. *CitiMortgage, Inc. v. Crawford*, 934 F. Supp. 2d 942, 947 (S.D. Ohio 2013). Ms. Cameron argues that she had two contracts with AHMSI—contracts for which Ocwen has assumed responsibility—the September 2010 Modification (Count One) and the December 2010 Modification (Count Two). The parties agree on most of the relevant facts, and the material point of contention is whether these two contracts were in fact formed.

### 1.   September 2010 Modification

The Court begins with the September 2010 Modification. It is uncontested that no one signed any documents regarding this alleged modification. It is also uncontested that Ms. Cameron did not make any payments pursuant to this modification. To prove the existence of this contract, Ms. Cameron relies primarily on AHMSI's presentation of the September 2010

---

[2] Ms. Cameron originally brought a fifth claim, an alleged Fair Debt Collection Practices Act violation against a law firm that represented Deutsche and Ocwen. (ECF No. 1 at 25–27.) Ms. Cameron dismissed this claim on August 31, 2018. (ECF No. 19.)

Modification to the Bankruptcy Court for approval. (Pl. Response to Def. Mot. Summ. J. at 9–11, ECF No. 30.)

Ms. Cameron looks for support in the principle of judicial estoppel. "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

Ms. Cameron argues that the representations that AHMSI made to the Bankruptcy Court are inconsistent with denying that the September 2010 Modification was a contract. (ECF No. 30, at 11.) The Court discerns no inconsistency. AHMSI merely sought the Bankruptcy Court's approval under the Bankruptcy Code to *offer* the September 2010 Modification. *See* 11 U.S.C. § 1329 (allowing modification of Bankruptcy plan but allowing Bankruptcy Court to disapprove). In the motion seeking the Bankruptcy Court's approval, AHMSI attested only that the parties had "agree[d] to terms and conditions set forth in attached Loan Modification Agreement terms [sic]." (ECF No. 1-4, at 1.) However, agreeing to the terms of an offer is not the same as the formation of a contract. AHMSI did not represent to the Bankruptcy Court that it had entered into a new or modified contract with Ms. Cameron, and Ocwen as AHMSI's successor-in-interest is not estopped from arguing in this case that there was no new or modified contract. Moreover, the Bankruptcy Court never "adopted" this position; it merely authorized (i.e., *permitted*) the modification offer to go forward. (ECF No. 1-5.)

AHMSI extended an offer by proposing the September 2010 Modification. However, Ms. Cameron has provided no evidence that she accepted that offer. She did not sign any documents

related to the modification, and she did not make any payments in the amount of the modification. The only evidence that Ms. Cameron offers is that she amended one of the schedules to her bankruptcy petition to amend her monthly mortgage payment to the amount in the September 2010 Modification. (ECF No. 30, at 4.) This was not an acceptance of AHMSI's offer. *Cf. Allen v. Ford Motor Co.*, No. 98-3807, 1999 WL 644345, at *1–2 (6th Cir. Aug. 18, 1999) (declining to recognize contract where offer was never signed and offeree merely engaged in necessary preparatory steps short of formal acceptance).

The September 2010 Modification offer was never accepted, and no contract was formed. Accordingly, Ocwen is entitled to summary judgment on Count One, with regard to the September 2010 Modification.

### 2. December 2010 Modification

In arguing that the December 2010 Modification offer did not result in a contract, Defendants rely on the lack of Robert Cameron's and AHMSI's signatures. That is, Defendants argue that the offer was never accepted because 1) Mr. Cameron failed to sign the modification, and 2) the Ohio Statute of Frauds bars the claim based on AHMSI's failure to sign. (Def. Mot. Summ. J. at 10, ECF No. 27.)

Beginning with the latter argument, Defendants have waived their statute of frauds argument. The statute of frauds is an affirmative defense that is waived if not raised as such in the pleadings. *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 547 (6th Cir. 1981); *see* Fed. R. Civ. P. 8(c)(1). Defendants raised no such affirmative defense in their Answer, and, therefore, an affirmative defense based on the statute of frauds has been waived. (Answer, at 23–24.)

The Court now turns to Defendants' primary argument. The parties agree that the December 2010 Modification constituted an offer. (ECF No. 27, at 9; ECF No. 30, at 10.) Where

they diverge is on the issue of acceptance. Specifically, Defendants argue that the offer was never accepted because Mr. Cameron never signed the modification. (ECF No. 27, at 10–11.)

Defendants argue that Mr. Cameron's signature was a condition of acceptance. This seems analogous to a condition precedent, the only difference being that a condition precedent exists *after* the contract is entered into (but before the contractual obligations become enforceable). *Mumaw v. W. & S. Life Ins. Co.*, 119 N.E. 132, 135 (Ohio 1917). Defendants rely on various pieces of evidence to establish their argument. For example, Ms. Cameron agreed as a part of the Mediation Agreement that any modification would require Mr. Cameron's signature. In addition, the December 2010 Modification that Ms. Cameron signed (i.e., the document that constitutes the contract if one was indeed formed) identified both Ms. Cameron and Mr. Cameron as co-borrowers, and there was a signature block for each. There is no dispute that Mr. Cameron did not sign this document.

Nevertheless, the December 2010 Modification explicitly outlines two circumstances in which the signatures of all signatories to the Loan are *not* required. One such circumstance is when the borrowers are divorced and the property has been transferred to one spouse in the divorce decree; Ms. Cameron has put forth evidence that that is the case here. The other is when the Lender has waived the requirement in writing. And Ms. Cameron has established sufficient evidence to invoke that exception, too, given AHMSI's October 5, 2011, letter in which it notified Ms. Cameron *and* Mr. Cameron that AHMSI had "processed the Modification Agreement." Thus, there is evidence to doubt whether Mr. Cameron's signature was truly a condition of acceptance, and this is a question of fact for a jury. *Cf. Villena v. Volz*, No. C-780801, 1980 WL 352746, at *2 (Ohio Ct. App. Dec. 17, 1980) (finding that evidentiary conflict

surrounding existence of condition precedent created question of fact). Whether Mr. Cameron's signature was a condition of acceptance is a genuinely disputed material fact.

Moreover, AHMSI could have waived the requirement of Mr. Cameron's signature. "[I]t is a basic principle of contract law that a party to a contract who would benefit from a condition precedent to its performance may waive that condition." *Sweeney v. Grange Mut. Cas. Co.*, 766 N.E.2d 212, 216 (Ohio Ct. App. 2001). Accordingly, a condition precedent is excused if the party asserting its existence waives that condition—i.e., that party voluntarily relinquishes that condition. *Id.* "When a condition is excused, its nonperformance is no bar to recovery on the contract." *Id.* The Court sees no reason why these principles would not apply equally to a condition of acceptance.

Even assuming Mr. Cameron's signature was such a condition, Ms. Cameron has presented sufficient evidence for a jury to find that Defendants waived this condition. For example, Ms. Cameron has testified that AHMSI managers told her that Mr. Cameron's signature was not necessary.

Moreover, throughout their course of dealing, Defendants' actions were inconsistent with an intent to enforce the condition of Mr. Cameron's signature. During the Foreclosure Action— which was filed against both Camerons—Deutsche mediated and entered into a Mediation Agreement with only Ms. Cameron. As a part of this agreement, Deutsche permitted Ms. Cameron alone to agree to a three-month trial period of payments. While Deutsche and Ms. Cameron stipulated that any final modification would need to be signed by both parties, the fact that Deutsche permitted Ms. Cameron alone to agree to the trial period is evidence of Defendants' willingness to waive any condition requiring Mr. Cameron's agreement.

In addition, AHMSI sent the April 2011 letter only to Ms. Cameron with only a place for Ms. Cameron to sign, something for which Ocwen has no explanation. Defendants also acted as if the December 2010 Modification was in place by accepting Ms. Cameron's reduced payments for approximately two years before beginning to reject them. Accordingly, whether the condition of Mr. Cameron's signature was waived is a question of fact to be decided by a jury. *Cf. Chamberlain v. Painesville & Hudson R.R. Co.*, 15 Ohio St. 225, 240 (1864) (allowing jury to consider whether condition precedent was waived); *Wells Fargo Bank v. Sowell*, 53 N.E.3d 969, 973–74 (Ohio Ct. App. 2015) (treating satisfaction of condition precedent as question of fact).

Ms. Cameron has presented sufficient evidence such that a jury could find that Mr. Cameron's signature was not a condition of acceptance for the December 2010 Modification or that, even if it was, Defendants waived that condition. Because there exist material issues of fact as to whether a contract was formed as to the December 2010 Modification, the Court **DENIES** Defendants' Motion for Summary Judgment as to Count Two.

The last issue that Defendants raise with regard to Count Two concerns damages. Emotional distress damages are available for a breach of contract claim only in limited circumstances. *Kishmarton v. William Bailey Constr., Inc.*, 754 N.E.2d 785, 788 (Ohio 2001) (adopting Second Restatement of Contracts and allowing emotional distress damages on a breach of contract claim only where the breach "'caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result'"). Ms. Cameron has not put forward any evidence to support such circumstances here. However, Defendants incorrectly imply that these are the only damages that Ms. Cameron seeks. While Ms. Cameron cannot recover emotional damages on her breach of contract claim, she has pleaded other damages that are potentially recoverable. (ECF No. 1, at 21; ECF No. 30, at 12–13.)

## B.    RESPA Regulation X Claim

Ms. Cameron next pleads a violation of RESPA Regulation X. Regulation X establishes various obligations of a loan servicer upon receiving a "notice of error." First, the servicer has five business days after receipt to acknowledge receipt of the notice. 12 C.F.R. § 1024.35(d). Second, within thirty business days from receipt, the servicer must respond by either correcting the error or by providing the borrower with a written notification, after conducting a reasonable investigation, that no error has occurred. *Id.* § 1024.35(e)(1)(i), (3)(i)(C). In the latter situation, that written notification must include "a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance." *Id.* § 1024.35(e)(1)(i)(B). The servicer is entitled to an extension of fifteen business days so long as it provides the borrower with notice of, and the reason for, the extension within the initial thirty-day period. *Id.* § 1024.35(e)(3)(ii).

A servicer is released from its § 1024.35(e) obligation to respond if it reasonably determines that "[t]he asserted error is substantially the same as an error previously asserted by the borrower . . . ." *Id.* § 1024.35(g)(1)(i). However, if it seeks to invoke this provision, the servicer must "notify the borrower of its determination in writing" within five business days "after making such determination" and must "set forth the basis" for this determination. *Id.* § 1024.35(g)(2).

Ocwen seeks to avoid any obligation under § 1024.35(e) by invoking § 1024.35(g), arguing that it is entitled to summary judgment because it had no obligation to respond to the Notice of Error because it was duplicative. (ECF No. 27, at 13–14). However, even assuming

that Ms. Cameron had previously asserted the same error, Ocwen did not send a § 1024.35(g)-compliant notice regarding such a duplication. Thus, Ocwen was obligated to send a notice that complied with § 1024.35(e).

Ms. Kaster sent the "Notice of Error" on Monday, February 5, 2018. Ocwen received the Notice of Error on Saturday, February 10, 2018. And Ocwen responded with an acknowledgment letter on Thursday, February 15, 2018. This acknowledgment letter was sent within five business days of receipt in compliance with § 1024.35(d). Ocwen again responded to Ms. Kaster's letter on Thursday, March 22, 2018, advising that it would be responding within the next fifteen business days. This extension notification was timely sent within thirty business days of receipt of the Notice of Error, in compliance with § 1024.35(e)(3)(ii).

Finally, Ocwen sent the Response Letter on Tuesday, April 27, 2018, which was an apparent attempt at a § 1024.35(e) response. The Response Letter was sent on the 45th business day after the Notice of Error was received in compliance with § 1024.35(e).[3] However, while timely under the statute, it does not appear that this letter complied with the substantive requirements of Regulation X.

The Response Letter did not assert that Ocwen corrected the claimed error. Accordingly, to have been compliant with § 1024.35(e)(1)(i) Ocwen must have conducted a reasonable investigation and then sent a letter that contained the following information: 1) a statement that it determined that no error occurred, 2) a statement of the reason(s) for this determination, and 3) a statement of the borrower's right to request the documents relied upon by Ocwen in reaching this determination, along with 4) information on how to do so and 5) contact information, including a phone number. A jury could find that the letter did not comply with all of these requirements.

---

[3] The Court takes judicial notice of the fact that Monday, February 19, 2018, was a federal holiday.

Ocwen has not met its burden to prove that it is entitled to judgment as a matter of law that it met its obligations under Regulation X. Defendants' Motion for Summary Judgment as to Count Three is **DENIED**.

In addition, pursuant to Rule 56(f)(1) of the Federal Rules of Civil Procedure, Ocwen is hereby on notice that it has fourteen days from the entry of this Order to provide evidence to this Court as to why the Court should not grant summary judgment in favor of Ms. Cameron as to Count Three. *See* Fed. R. Civ. P. 56(a)(1).

### C.     FDCPA Violation

Finally, Ms. Cameron alleges a FDCPA violation by Ocwen. Recognizing that the FDCPA has a one-year statute of limitations, Ms. Cameron limits her claim to "Ocwen's decision to reopen and maintain the Foreclosure" in the summer of 2017. (ECF No. 30, at 19–20.) However, Ms. Cameron has not offered any evidence to support what role Ocwen may or may not have had in this decision. Rather, it was Deutsche who brought the Foreclosure Action, and Ms. Cameron has only established that it was Deutsche and its counsel who were involved in these proceedings. As a result, there is no genuine issue of material fact that Ocwen committed any of the acts that provide the basis for the asserted FDCPA violation.

Accordingly, Defendants' Motion for Summary Judgment as to Count Four is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED** as to Counts One and Four and **DENIED** as to Counts Two and Three. Ocwen is also **ORDERED** to provide a response within fourteen days from the entry of this Order as to why this Court should not grant summary judgment in favor of Ms. Cameron as to Count Three.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**