# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**Elizabeth Cameron,**

    **Plaintiff,** : Case No. 2:18-cv-428

    **v.**                                **Judge Sarah D. Morrison**
                                  : **Chief Magistrate Judge Elizabeth P. Deavers**

**Ocwen Loan Servicing, LLC,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

On May 2, 2018, Plaintiff Elizabeth Cameron filed a Complaint alleging, among other things, that Defendant Ocwen Loan Servicing, LLC, ("Ocwen") had violated Real Estate Settlement Procedures Act ("RESPA") Regulation X (Count Three). (Compl., at 12–14, 16–18, 21–24, ECF No. 1.) Specifically, Ms. Cameron alleged that she had sent Ocwen a Notice of Error ("NOE") and that Ocwen's response had been statutorily deficient. (*Id.* ¶¶ 101–06.) Plaintiff requested actual and statutory damages, costs, and attorney's fees as a result of the alleged RESPA violation. (*Id.* ¶¶ 112–14.) Subsequently, Ocwen made a Motion for Summary Judgment on Count Three, which relied almost entirely on the argument that Ocwen had responded to Ms. Cameron's NOE in compliance with Regulation X. (ECF No. 27, at 12–15.) Ms. Cameron opposed the motion (ECF No. 28) but did not request summary judgment herself.

The Court subsequently ordered Ocwen, pursuant to Rule 56(f)(1), to provide evidence as to why the Court should not grant summary judgment in favor of Ms. Cameron on Count Three. *Cameron v. Ocwen Loan Servicing, LLC*, No. 2:18-CV-428, 2019 WL 6020585, at *9 (S.D. Ohio Nov. 14, 2019). Ocwen has filed a statement as to why it did not believe summary judgment was

1

appropriate (ECF No. 36), and Ms. Cameron filed a statement in support of summary judgment (ECF No. 38).

To repeat the key facts, Defendant Deutsche Bank National Trust Company ("Deutsche"), the noteholder on Ms. Cameron's mortgage, sought to foreclose on Ms. Cameron's home (the "Foreclosure Action"). *See Cameron*, 2019 WL 6020585, at *1. Ms. Cameron subsequently sought to enter into various modifications of her mortgage payments (the "Modifications"), including a modification in December 2010 (the "December 2010 Modification"), with Ocwen, her loan servicer. *See id.* at *1–4. After Ocwen began to reject Ms. Cameron's mortgage payments, counsel for Ms. Cameron sent a letter to Ocwen in November 2013 alleging that Ocwen was not complying with the Modifications. (ECF No. 1-12, at 27.) Ocwen responded that it could find no record of an executed modification. (Howard Handville Dep., 43:5–14, ECF No. 30-1.)

On February 5, 2018, counsel for Ms. Cameron, Whitney Kaster, sent an NOE to Ocwen. (ECF No. 1-13.) On April 17, 2018, counsel for Ocwen, Sarah Wilson, timely responded to Ms. Kaster (the "Response Letter"). (ECF No. 1-16.) On May 22, 2018, the Foreclosure Action was terminated, although the reason why is not entirely clear. (ECF No. 27-16, at 1.)

As was detailed in the Court's November Opinion and Order, Ocwen was obligated to comply with § 1024.35(e)(1) in crafting its Response Letter. *Cameron*, 2019 WL 6020585, at *8. Accordingly, the Response Letter should have either corrected the identified error or contained the following information: 1) a statement that Ocwen had determined that no error occurred, 2) a statement of the reason(s) for this determination, and 3) a statement of the borrower's right to request the documents relied upon by Ocwen in reaching this determination, along with 4) information on how to do so and 5) contact information, including a phone number. *Id.*

Ocwen continues to insist that its Response Letter met these five requirements. (ECF No. 36, at 4–5.) It indisputably did not. Principally, the Response Letter did not state that no error occurred. (ECF No. 1-16.) It merely stated that an investigation was ongoing. (*Id.*) The Response Letter stated that Ocwen had been unable to locate a signed copy of the December 2010 Modification, (*id.*), but that does not categorically establish that an error had not occurred. If anything, it demonstrates Ocwen's concern that an error *may actually have* occurred. Nor can it be said that such a statement provides a reason for Ocwen's "determination" when it is apparent that Ocwen failed to make any determination at all. The Response Letter also did not state that Ms. Cameron had a right to request documents from Ocwen, and, in fact, it requested documents of Ms. Cameron. It did not provide information on how to request documents. (*Id.*) The Response Letter did include what appears to be Ms. Wilson's phone number. (*Id.*) Accordingly, the Court finds that the Response Letter did not comply with the first four of these five requirements.

Regarding requirements one and two, Ocwen argues that the Response Letter stated "that there is no evidence that the alleged errors occurred" and says that the failure to find a signed copy of the December 2010 Modification was the asserted reason for that "determination." (ECF No. 36, at 4.) In the first instance, that is not what the Response Letter says. In relevant part, the Response Letter says:

> Please be advised that Ocwen's investigation of the above issues is ongoing, as Ocwen has been unable to determine why [the Modifications] were not implemented by [the prior loan servicer], and why the Loan was not boarded with Ocwen as modified by [the December 2010 Modification]. As of the date of this correspondence, Ocwen has been unable to locate a signed copy of [the December 2010 Modification], nor has Ocwen been able to locate any Order entered by the Bankruptcy Court approving [the December 2010 Modification] to be implemented by [the prior loan servicer].

(ECF No. 1-16.) The Response Letter never stated—or even implied—that no error occurred. It merely stated that Ocwen had been unable to find any information as to the circumstances surrounding the Modifications. But § 1024.35(e)(1) demands a *determination*. An expression of uncertainty, as here, is entirely the opposite of a determination. Ocwen cites no case law to support its contention that such dithering can satisfy a mortgage servicer's obligations under Regulation X. The Court is not persuaded that it can, particularly because RESPA, as a remedial statute, "is construed broadly to effectuate its purposes." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (per curiam).

Moreover, Ocwen acknowledges that its Response Letter never "directly state[d]" that Ms. Cameron could request the documents relied upon by Ocwen in reaching its "determination" and never provided information on how to do so. (ECF No. 36, at 4.) It insists that this is because "there are no such documents to obtain." (*Id.*) That is nonsense. Regulation X demands that a loan servicer provide documents on which it *relies*, not just documents that might support a borrower's contention.

In stating that "Ocwen has been unable to locate a signed copy of" the December 2010 Modification, Ocwen acknowledges, as it must, that it looked somewhere to locate such a document, perhaps a database or a file. These are "document[s]" on which Ocwen relied in reaching its "determination," assuming the Response Letter can be classified as such. Ocwen also has provided in this litigation unsigned copies of the December 2010 Modification, additional documents that it no doubt relied on in responding to the NOE. If indeed Ocwen searched high and low to find signed modification documents but came up empty, it could have provided—indeed was legally obligated to provide—documentary evidence from this search.

4

Nevertheless, even though Ocwen's Response Letter was deficient, "not all RESPA violations are actionable." *Ranger v. Wells Fargo Bank N.A.*, 757 F. App'x 896, 901 (11th Cir. 2018). Ms. Cameron must prove 1) that she suffered actual damages and 2) that those damages were caused by Ocwen's violation. *See id.*; 12 U.S.C. § 2605(f)(1) (2018) (providing for actual damages "as a result of" a servicer's failure to comply with the statute). Ms. Cameron contends that she did suffer damages as a result of Ocwen's deficient Response Letter. Specifically, she alleges emotional distress damages and attorney's fees and costs related to the NOE and the Foreclosure Action. (ECF No. 38, at 13.)

Beginning with the fees and costs related to the NOE, "the cost of preparing a [Qualified Written Request] that is inadequately responded to may sometimes constitute actual damages."[1] *Lanton v. Ocwen Loan Servicing, LLC*, No. 18-3709, 2019 WL 6322429, at *3 (6th Cir. Nov. 26, 2019). Even though the costs of preparing the NOE were incurred before any RESPA violation had ripened, the Sixth Circuit has contemplated that such costs can *become* actual damages when the servicer fails to adequately respond to the letter. *See Marais*, 736 F.3d at 721; *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 728 (S.D. Ohio 2014) ("[I]n some cases, a wrongful act can cause damages retroactively. If a fellow pays a painter to paint his house, the payment is a cost. If the painter in fact[] paints the house, the cost remains a cost. If the painter does not paint the house and instead[] absconds with the money, the cost (though already incurred and paid) transmogrifies into damages."). Because Ocwen's response to the NOE was deficient, the costs and fees that Ms. Cameron incurred in writing and sending the NOE turned into damages after Ocwen's deficient response solidified the cause of action. Ms. Cameron is entitled to summary judgment on this aspect of her claim.

---

[1] An NOE is a type of Qualified Written Request. *See Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 669 n.3 (10th Cir. 2018).

RESPA damages can include emotional damages. *Houston v. U.S. Bank Home Mortg. Wisc. Servicing*, 505 F. App'x 543, 548 n.6 (6th Cir. 2012). However, Ms. Cameron has never alleged that she suffered any emotional damages "as a result of" Ocwen's inadequate response and has failed to provide any evidence that she has. She is thus not entitled to such damages.

Ms. Cameron also claims that she is entitled to damages resulting from the Foreclosure Action because she says that she would not have incurred fees and costs related to that action if Ocwen had properly responded to the NOE. (ECF No. 38, at 12.) However, Ms. Cameron has not put forth any evidence that connects any damages resulting from the Foreclosure Action with Ocwen's inadequate response to the NOE. Indeed, the Court finds it difficult to believe any such proof could exist given the short span of time in-between the April 17, 2018, Response Letter, and the May 22, 2018, termination of the Foreclosure Action. Unlike with the costs of preparing the NOE, the Court sees no basis as to how any fees or costs related to the Foreclosure Action incurred prior to the deficient Response Letter could morph into damages, and Ms. Cameron never argues that they could. That means that any fees or costs related to the Foreclosure Action could only be recoverable if they were incurred 1) after April 17, 2018, and 2) were incurred *because of* Ocwen's deficient response. Ms. Cameron offers no evidence that any such fees or costs exist.

Accordingly, the Court finds that Ms. Cameron is entitled to summary judgment on her RESPA claim (Count Three) regarding her actual damages; however, the only actual damages to which she is entitled are those directly related to the preparation and mailing of the NOE and the receipt of the Response Letter.

Ms. Cameron also sought statutory damages in her initial Complaint. (ECF No. 1 ¶ 114.) Such damages are authorized (up to $2,000) "in the case of a pattern or practice of

noncompliance with the requirements" of Regulation X. 12 U.S.C. § 2605(f)(1)(B). The Court makes no determination as to statutory damages here, and that aspect of the claim remains for trial.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**